United States Court of Appeals
For the First Circuit

No. 24-1971

DAVID KEANE,

Plaintiff-Appellant,

v.

EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.; EXPEDITORS
HONG KONG LIMITED,

Defendants-Appellees.

ON APPEAL FROM THE JUDGMENT OF
UNITED STATES DISTRICT COURT,
DISTRICT OF MASSACHUSETTS
No. 1:24-cv-10399-PBS
Hon. Patti B. Saris

**BRIEF OF APPELLANT DAVID KEANE**

Jeremia A. Pollard
Hannon Lerner
184 Main Street
P.O. Box 697
Lee, MA  01238
(413) 243-3311
MA BBO #643382, First Circuit#120002
jpollard.hannonlerner@gmail.com

Attorney for David Keane,
Plaintiff/Appellant

January 9, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, iv

REQUEST FOR ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . v

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . p. 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 2-10

A. Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 2-3

B. Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 3-10

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 10-12

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 12-30

I. THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING THE
CASE ON FORUM NON CONVENIENS GROUNDS . . . . . . pp. 12-18

A. The Court Misapprehended Key Facts and Misapplied the Legal Standard

    1. Private Interest Factors

B. The Defendants Failed to Show Hong Kong is an Adequate Alternative Forum

II. THE DISTRICT COURT ERRED IN DISMISSING FOR LACK OF
PERSONAL JURISDICTION OVER EXPEDITORS HONG KONG
LIMITED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .pp. 18-25

A. The Court Failed to Consider and Give Proper Weight to Evidence Establishing
Establishing Expeditors HK's Purposeful Availment of Massachusetts

B. The Due Process Clause Permits Exercising Personal Jurisdiction Over
Expeditors HK

    1. Relatedness

    2. Pursposeful Availment

    3. Reasonableness

III. THE DISTRICT COURT ERRED IN DISMISSING COUNTS I, V, AND VI AGAINST EXPEDITORS US FOR LACK OF PERSONAL JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 25-30

A. The Court Misapplied the Relatedness Prong for Personal Jurisdiction

B. Purposeful Availment and Reasonableness Support Jurisdiction

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 30

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 31

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 32

ADDENDUM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 33

# TABLE OF AUTHORITIES

## CASES

Adelson v. Hananel

      510 F.3d 43 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 22

Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.

      825 F.3d 28 (1st Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 18

Curtis v. Galakatos

      19 F.4th 41 (1st Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 12, 13,16

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.

      290 F.3d 42 (1st Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 19, 20, 21

Gigi Kai Zi Chan v. Wellington Mgmt. Co.

      424 F. Supp. 3d 148 (D. Mass. 2019). . . . . . . . . . . . . . . . . . . . . p. 18

Gulf Oil Corp. v. Gilbert

      330 U.S. 501 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 13, 14

Harlow v. Children's Hosp.

      432 F.3d 50 (1st Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 28

Inn Foods, Inc. v. Equitable Coop. Bank

      45 F.3d 594 (1st Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 20

Nova Biomedical Corp. v. Moller

      629 F.2d 190 (1st Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 28

Nowak v. Tak How Invs., Ltd.

      94 F.3d 708 (1st Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 24, 27

Phillips v. Prairie Eye Ctr.

530 F.3d 22, 26 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 19

<u>Piper Aircraft Co. v. Reyno</u>

     454 U.S. 235 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 13, 16

<u>Tatro v. Manor Care, Inc.</u>

     416 Mass. 763, 625 N.E.2d 549 (1994). . . . . . . . . . . . . . . . . p. 27

<u>Ticketmaster-New York, Inc.</u> v. <u>Alioto,</u>

     26 F. 3d 201, 210-212 (1st Cir. 1994). . . . . . . . . . . . . . . . . . . p. 24

<u>United Electric, Radio & Machine Workers of Am.</u> v. <u>163 Pleasant St. Corp.,</u>

     960 F.2d 1080, 1087 (1st Cir. 1992). . . . . . . . . . . . . . . . . . . . p. 26

## <u>STATUTES AND RULES</u>

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 1

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 1

28 U.S.C. § 1332. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 1

Fed. R. App. P. 4(a)(4)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 1

Fed. R. Civ. P. 59(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 1, 2

Fed. R. Civ. P. 60(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pp. 1, 2

Hong Kong Employment Ordinance Cap. 57 § 32I. . . . . . . . . . . . . . p. 18

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq... pp. 1, 2, 3

# REQUEST FOR ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a), Plaintiff-Appellant David Keane respectfully requests oral argument. This appeal presents important questions regarding personal jurisdiction, including the Commonwealth's compelling interest in protecting its citizens from coercive employer practices at issue in this case, as well as the application of the doctrine forum non conveniens to a Fortune 500 company with ties to Massachusetts. Oral argument would assist the Court in resolving these issues.

## JURISDICTIONAL STATEMENT

Jurisdiction arises from 28 U.S.C. § 1331, as the case involves claims arising under federal law, specifically Title VII of the Civil Rights Act of 1964. Additionally, diversity jurisdiction applies pursuant to 28 U.S.C. § 1332, because the action involved citizens of different states and a citizen of a state and a subject of a foreign state, with the amount in controversy exceeding $75,000.

The District Court entered a final order dismissing the case on August 22, 2024. Add. 1.[1] Plaintiff-Appellant David Keane timely filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) and, in the alternative, to correct clerical mistakes under Federal Rule of Civil Procedure 60(a). A. 8. The District Court denied this motion on October 18, 2024. Add. 25.

Pursuant to Federal Rule of Appellate Procedure 4(a)(4)(A), the thirty days to file an appeal runs from the entry of the order disposing of the last remaining motion listed in that rule, including motions under Rule 59(e) and Rule 60. Keane filed his notice of appeal on October 23, 2024, within thirty days of the District Court's denial of his post-judgment motion. A. 136-137. Accordingly, the notice of appeal was timely filed. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291, as it is an appeal from a final decision of the District Court.

---

[1] References herein are to the Addendum as "Add. [page]" and the Appendix as "A. [page]."

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred in granting dismissal of Counts I, V and VII on forum non conveniens grounds considering the facts alleged and the private and public interests raised in the Plaintiff's Complaint.

2. Whether the District Court erred in dismissing the case for lack of personal jurisdiction over Expeditors Hong Kong Limited, as the Plaintiff established sufficient contacts with Massachusetts.

3. Whether the District Court erred in dismissing Counts I (Title VII claim), V (interference with prospective business relations), and VII (negligent infliction of emotional distress) against Expeditors International of Washington, Inc. for lack of personal jurisdiction.

## STATEMENT OF THE CASE

**A.    Procedural History**

On February 20, 2024, Plaintiff-Appellant David Keane filed a Complaint against Defendants-Appellees Expeditors International of Washington, Inc. ("Expeditors US") and Expeditors Hong Kong Limited ("Expeditors HK") in the United States District Court for the District of Massachusetts, alleging violations of

Title VII and other state law claims related to his employment and termination. Add. 6.

The Defendants moved to dismiss the Complaint based on lack of personal jurisdiction and forum non conveniens. A. 4. On August 22, 2024, the District Court granted the Defendants' motion, dismissing the claims against Expeditors HK and Expeditors US for lack of personal jurisdiction, and dismissing the remaining claims against Expeditors US for forum non conveniens. Add. 1-24. Keane then filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) and, alternatively, to correct clerical mistakes under Rule 60. A. 8. The District Court denied this motion. Keane timely appealed. A. 8. The District Court concluded that the "center of gravity" of the events surrounding Keane's termination was in Hong Kong, and as such, found that Hong Kong was the more appropriate and convenient forum. Add. 22-23.

**B.     Factual Background**

David Keane is a nearly lifelong resident of Massachusetts who began his career with Expeditors US in 1998 after responding to a job advertisement in the Boston Globe. A. 67. For over twenty years, Keane worked out of Expeditors US's office in Peabody, Massachusetts, where he held the position of Global Account Manager. A. 67-68. During his tenure, Keane significantly expanded the Lenovo account, growing it from $12 million in annual sales to generating between $45

3

million and $60 million annually in profits. A. 68. This accomplishment solidified his importance to Expeditors US and highlighted his deep professional ties to **Massachusetts.**

In 2016, Expeditors US, through its Director of Account Management for North America, Mr. Brian McGinnis, approached Keane on behalf of Mr. Allen Wang, a Senior Vice President of Expeditors US and a Director of Expeditors HK, with a request to relocate to Hong Kong to manage the Lenovo account from abroad and transfer the account to Expeditors HK, a wholly owned subsidiary of Expeditors US. A. 68. Keane declined this request due to his strong personal and family ties to Massachusetts. Id. Despite Keane's refusal, Expeditors US threatened to reassign the lucrative Lenovo account, which Keane had significantly grown, to another employee if he did not agree to the transfer. Id. This initial threat marked the beginning of a coercive campaign by the Defendants to pressure Keane to relocate to Hong Kong to retain his position and the Lenovo account that he had successfully developed.

In 2017 and 2018, the Defendants intensified their efforts to compel Keane to relocate. Over this prolonged period, Mr. McGinnis and other senior executives repeatedly contacted Keane while he was in Massachusetts. A. 68-69. They conveyed that Mr. Wang was insistent on transferring both Keane and the lucrative Lenovo account to Expeditors HK. Id. The Defendants escalated their coercive

4

tactics, applying continuous pressure over these two years. A. 68. Initially, they reiterated the threat to reassign the Lenovo account if Keane did not comply. Id. When this proved ineffective, they ultimately threatened to terminate his employment altogether if he refused to agree to the transfer. Facing the imminent loss of his longstanding career and the account he had cultivated, Keane reluctantly acquiesced to the Defendants' demands. A. 69.

Keane and Expeditors US first reached an oral agreement while Keane was in Massachusetts. Id. The terms provided that Keane would temporarily relocate to Hong Kong to manage the Lenovo account until a suitable replacement could be found, after which he would return to his original position in Massachusetts. Id. This agreement was crucial to Keane, as it assured him that his move would not be permanent and that his ties to Massachusetts would be preserved. Id.

On July 10, 2018, while still residing and working in Massachusetts, Keane signed a written employment agreement (the "2018 Agreement") that set forth the terms of his relocation and employment in Hong Kong. A. 69-70. The agreement was presented to Keane at his office in Peabody, Massachusetts, and he signed it there. Id. The 2018 Agreement was executed on behalf of Expeditors US by Mr. Wang, who signed as "Senior Vice President—North Asia," a role that reflects Mr. Wang's capacity within both Expeditors US and Expeditors HK. A. 55. The agreement bore the seal of Expeditors US on every page. A. 49-56.

Upon relocating to Hong Kong in September of 2018, Keane continued to manage the Lenovo account, which remained highly profitable. A. 70. Despite the assurances given, Keane alleges that the Defendants did not make genuine efforts to find a replacement for him, effectively marooning him in Hong Kong and preventing his return to Massachusetts as promised. Id.

In September 2023, during a company-hosted awards dinner in Hong Kong, an incident allegedly occurred involving Keane and a colleague. A. 72. Specifically, it was claimed that Keane inappropriately interacted with the colleague by kissing her shoulder without her consent. A. 46. Keane was summarily dismissed following the allegation. A. 72. In affidavits supporting dismissal, Expeditors did not identify any of the witnesses interviewed with regard to the investigation. A. 46. Per his Complaint, Keane denies these allegations and maintains that he did not engage in any misconduct at the event. A. 11-12.[2] Notably, despite the alleged incident occurring in September, Keane was not informed of the accusation until approximately one month later in October. DK at para. 10. Because of this delay, by the time Keane was notified, the CCTV recordings from the event, which would have provided evidence to support his defense, had been automatically deleted in the normal course of business. A. 74.

---

[2] In an affidavit, Keane attested to the affirmations in his Complaint. A. 43.

This lack of timely notification deprived Keane of the opportunity to preserve critical evidence that could have corroborated his account. A. 12.

Furthermore, in late September 2023, shortly after the alleged incident at the awards dinner but before informing Keane of any misconduct allegations, Expeditors HK presented him with a new employment agreement (the "2023 Agreement"). A. 72. This agreement changed his official employer from Expeditors US to Expeditors HK and included terms less favorable to him. Complaint at para. A. 13. Keane contends that this was a calculated move by the Defendants to facilitate his termination and to undermine his ability to assert his rights under the original agreements made in Massachusetts. A. 14.. Keane believes that the timing was strategic, aiming to divest the U.S. District Court of jurisdiction over his claims. Id.

Keane asserts that the Defendants justified his termination in part by referencing a previous false allegation of sexual harassment made against him in 2014–2015 while he was employed by Expeditors US in Massachusetts. A. 72-73. That prior allegation had been investigated in Massachusetts and was determined to be unfounded after evidence showed that the accuser had fabricated the claims to advance her career. Id.

Furthermore, Keane contends that his termination was part of a covert termination program allegedly implemented by Expeditors US, wherein over 2,000

employees were clandestinely terminated despite the company's public assertions of a no-layoff policy. A. 15-29. Keane alleges that this program was designed to reduce the workforce without attracting public scrutiny or negative attention from stakeholders, and that his termination was a result of this covert effort. A. 20. Keane maintains that the Defendants used the misconduct allegations as a pretext to include him in this covert reduction of personnel, thereby unlawfully terminating his employment under the ruse of addressing workplace misconduct. A. 30, 73-74.

Keane returned to Massachusetts and filed suit against both Expeditors US and Expeditors HK, asserting claims including violation of Title VII of the Civil Rights Act, breach of the oral agreement, and breach of the 2018 Agreement. Complaint at paras. A. 31-41. He alleges in his Complaint that the Defendants breached the agreements made in Massachusetts and that their coercive scheme caused him significant harm. Id.

In his affidavit, Keane identified more than a dozen witnesses, along with their locations and the expected substance of their testimony. These witnesses were situated in various U.S. states, including Massachusetts, Washington, Florida, Georgia, California, Arkansas, Illinois, and North Carolina. A. 73-74. Keane maintained that these witnesses could testify about key aspects of his case, including the negotiation and formation of the agreements, his performance, the

events leading to his termination, and the prior false allegation investigated in Massachusetts. Id. Subsequent to filing the Compalint, Keane learned that the new Global Account Manager for the Lenovo Account resides in Boston, Massachusetts. A. 95.

In contrast, the Defendants submitted affidavits that did not identify any witnesses by name, specific location, or describe the relevance of their anticipated testimony. A. 46. The Defendants do not identify who made the decision to terminate Keane. The Defendants failed to indicate how Hong Kong was a more convenient or appropriate forum, as they did not provide information about witnesses, or any evidence gathered from them. Also, the Defendants claimed that Expeditors HK, not Expeditors US, was the proper party to the 2018 Agreement. A. 45-46. While the District Court found that it had personal jurisdiction over Expeditors US with respect to the 2018 Agreement claim, it concluded that it lacked personal jurisdiction over Expeditors HK, even though the Defendants themselves asserted that Expeditors HK was the true party to the agreement despite Wang's signature on behalf of Expeditors US. A. 55. The court reasoned that Keane had not identified any director or officer of Expeditors HK who was involved in the formation or negotiation of the 2018 Agreement. Add. 12.

However, Keane contends that the court overlooked critical evidence demonstrating that Mr. Wang, who was a Director of Expeditors HK and a Senior

Vice President of Expeditors US, was directly involved in the negotiation and formation of the 2018 Agreement. A. 68-69. Keane affirmed that Mr. Wang signed the 2018 Agreement and that his involvement, along with that of other executives, was instrumental in securing Keane's relocation. A. 68-70. Wang signed the agreement for Expeditors US, with the contract bearing Expeditors US's seal. A. 55. The foregoing evidence establishes sufficient contacts for the court to exercise personal jurisdiction over Expeditors HK.

Keane's case raises significant legal questions regarding personal jurisdiction, the appropriateness of dismissing the case on forum non conveniens grounds, and the enforcement of rights for employees coerced into unfavorable employment situations abroad. He asserts that the Defendants' minimal evidentiary submissions contrasted sharply with his own detailed affidavits and that the Court's apparent disregard of this disparity warrants reconsideration.

## SUMMARY OF THE ARGUMENT

The District Court erred in granting dismissal on forum non conveniens grounds. The court misconstrued the facts by incorrectly stating that Keane argued "without support", Add. 21-22, that witnesses are located around the world, ignoring Keane's detailed affidavits identifying numerous U.S.-based and internationally located witnesses and their expected testimony. The court failed to

10

give due weight to the record in allowing the Defendant's motion to dismiss, failing to properly weigh the private and public interest factors. The Defendants failed to meet their heavy burden of demonstrating that the private interests strongly favored dismissal, especially given their submission of affidavits lacking specifics about witnesses or evidence in Hong Kong. Throughout this ordeal, Keane's strong ties to Massachusetts remained at the forefront. His acceptance of a relocation to Hong Kong was under threat of termination. The coercive nature of the Defendants' conduct—including pressuring him into relocating from Massachusetts to Hong Kong, presenting him with a new 2023 Agreement before notifying him of misconduct allegations, and attempting to change his employer to undermine his legal rights, established sufficient basis for establishing personal jurisdiction and adjudicating this matter in Massachusetts.

The District Court further erred in dismissing Plaintiff-Appellant David Keane's claims against Expeditors HK for lack of personal jurisdiction. The court overlooked critical evidence demonstrating that Expeditors HK, through its Director and Senior Vice President, Mr. Allen Wang, was directly involved in the negotiation, formation, and signing of the 2018 Agreement with Keane in Massachusetts and that the agreement conferred substantial benefits upon Expeditors HK. This evidence establishes that Expeditors HK purposefully availed

itself of the privilege of conducting activities in Massachusetts, satisfying both the

Massachusetts long-arm statute and Due Process Clause requirements.

The court further erred in dismissing Counts I (Title VII claim), V

(interference with prospective business relations), and VI (negligent infliction of

emotional distress) against Expeditors US for lack of personal jurisdiction. The

court incorrectly concluded that these claims did not arise from Expeditors US's

activities in Massachusetts, despite substantial evidence that Keane's Title VII and

other claims are rooted in conduct occurring in Massachusetts, including a prior

false allegation and investigation that formed part of the basis for his termination.


## ARGUMENT

### I. THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING THE CASE ON FORUM NON CONVENIENS GROUNDS

#### A. The Court Misapprehended Key Facts and Misapplied the Legal Standard

A district court's decision on forum non conveniens is reviewed for abuse of

discretion, which occurs when a "district court has '(1) failed to consider a material

factor; (2) substantially relied on an improper factor; or (3) assessed the proper

factors, but clearly erred in weighing them.'" Curtis v. Galakatos, 19 F.4th 41, 49

(1st Cir. 2021) (citations omitted). The District Court erred in dismissing Keane's

claims on forum non conveniens grounds. Under the doctrine of forum non conveniens, the plaintiff's choice of forum is entitled to substantial deference, particularly when the plaintiff is a resident of the forum state, as here. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). Dismissal is appropriate only if the Defendants can demonstrate that the private and public interest factors "strongly favor" trial in the alternative forum. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). The burden of proof rests squarely on the Defendants to show that dismissal is warranted. In this regard, the Defendant must provide clear and specific evidence outlining the relevant private and public interests and demonstrate that these factors heavily weigh in favor of an alternative forum. See Curtis, 19 F.4th at 54.

In this case, the Defendants failed to meet their burden. Indeed, they offered nothing but conjuncture to support their argument. In this regard, The District Court improperly concluded that Hong Kong was the "center of gravity" of the events lay in Hong Kong. Add. 22. This conclusion was reached without sufficient evidentiary support and despite the Defendants' failure to provide detailed information necessary for a proper analysis of the private and public interest factors.

### 1. Private Interest Factors

The private interest factors weigh heavily in favor of retaining jurisdiction in Massachusetts. These factors include the relative ease of access to sources of proof, the availability and cost of obtaining witnesses, and all other practical problems that make trial of a case easy, expeditious, and inexpensive. See <u>Gulf Oil</u>, 330 U.S. at 508. Keane provided detailed affidavits identifying numerous witnesses located in the United States, their locations, and the expected substance of their testimony. These witnesses are crucial to his claims and include:

- **Individuals involved in the negotiation and formation of the agreements**: These witnesses are located in Massachusetts and other states within the U.S. They can testify about the development, negotiation, and execution of the oral agreement and the 2018 Agreement, which are central to Keane's claims and were formulated in Massachusetts, where he had been a long-standing employee.

- **Witnesses related to the prior false allegation investigated in Massachusetts**: These witnesses include individuals who were involved in the investigation of the prior allegation of sexual harassment against Keane while he was employed by Expeditors US in Massachusetts. Their testimony is essential to Keane's Title VII claim and his allegations of disparate treatment and discriminatory practices. The relevant investigation and

conclusion thereof occurred while Keane was employed in Massachusetts. A. 72-73.

- **Defendants failed to identify who made the termination decision**: In failing to identify who made the termination decision, the Defendants failed to sustain their burden. The testimony is crucial to understanding the reasons behind Keane's termination and any role that Expeditors US had in that decision.

- **The current Lenovo account representative**: The individual who now manages the Lenovo account, previously handled by Keane, was based in Massachusetts as of May 25, 2024, subsequent to the filing of this action. A. 95-97. This person can provide critical testimony regarding the operations of the Lenovo account, the circumstances surrounding the transfer of the account after Keane's termination, and company practices related to account management. Their testimony would be highly relevant to Keane's claims, particularly concerning the Defendants' obligations under the agreements and the impact of his termination on the account.

By contrast, the Defendants submitted affidavits that failed to identify any witnesses by name, location, or the relevance of their anticipated testimony, much less any specifics thereof. They did not disclose who made the decision to terminate Keane or provide specifics about evidence located in Hong Kong. The

Defendants provided an affidavit affirming that witnesses interviewed "lived and worked in Hong Kong or East Asia" and none of whom "lived or worked in Massachusetts at the time of the investigation." A. 46.

The Defendants' submissions are insufficient to meet their heavy burden. As the First Circuit emphasized in Curtis v. Galakatos, defendants must provide detailed information necessary for the court to analyze whether they have met the requisite burden for dismissal on forum non conveniens grounds. Curtis, 19 F.4th at 55-56 (finding that defendant's assertions that "nearly all of the identifiable witnesses to this incident other than the Plaintiffs reside in Greece" was inadequate to form basis of dismissal for forum non conveniens). Specifically, the defendants must identify key witnesses, cannot rely on assumptions, and must provide at least a general statement of their testimony, and explain how these witnesses would be inconvenienced by trial in the current forum. Id. Vague assertions and generalizations are inadequate. The court's reliance on assumptions rather than the evidentiary record was improper. The burden was on the Defendants to prove that the private interest factors strongly favor dismissal. Piper, 454 U.S. at 255-57.

Moreover, the District Court's conclusion that Keane argued "without support" that witnesses are located around the world overlooks the substantial and detailed information that Keane provided. Keane's affidavits identified more than a dozen witnesses in the United States, including their locations and the topics of

16

their expected testimony. These witnesses are essential to proving his claims. The Defendants, on the other hand, failed to identify any specific witnesses in Hong Kong whose testimony would be material and who would be inconvenienced by litigation in Massachusetts.

Under these circumstances, the District Court should have given substantial weight to Keane's choice of forum. As a resident of Massachusetts and a U.S. citizen, Keane's choice is entitled to greater deference. Id. Dismissal in favor of a foreign forum is not appropriate unless the balance of private interests is strongly in the defendant's favor. Id. Massachusetts has a compelling interest in protecting its citizens from coercive employer practices at issue in this case.

In failing to provide any detail regarding information about witnesses and evidence in Hong Kong, the Defendants failed to meet their burden of proof. The private interest factors, when properly considered, do not strongly favor dismissal. As such, the District Court abused its discretion by granting the Defendants' motion without requiring them to satisfy the heavy burden imposed by the forum non conveniens doctrine.

**B. The Defendants Failed to Show Hong Kong Is an Adequate Alternative Forum**

The Defendants did not demonstrate that Hong Kong is an adequate alternative forum or that there are no statute of limitations issues which would preclude Keane from bringing his wrongful termination claims, which are now

17

time-barred under Hong Kong's nine-month statute of limitations for wrongful termination claims, which is non-waivable. See Hong Kong Employment Ordinance Cap. 57 § 32I. Moreover, Defendants did not agree to make witnesses or evidence available in Hong Kong. Without such assurances and given the procedural and substantive disadvantages Keane would face, Hong Kong cannot be considered an adequate alternative forum. See, e.g., Gigi Kai Zi Chan v. Wellington Mgmt. Co., 424 F. Supp. 3d 148, 154 (D. Mass. 2019) (reasoning that Hong Kong is inadequate as a forum if some claims would be time-barred). Here, the claims were time-barred in Hong Kong, rendering it a forum in which no relief may be granted. As such, the motion judge improperly ruled that the matter should be dismissed on the basis of forum non conveniens.

## II. THE DISTRICT COURT ERRED IN DISMISSING FOR LACK OF PERSONAL JURISDICTION OVER EXPEDITORS HONG KONG LIMITED

### A. The Court Failed to Consider and Give Proper Weight to Evidence Establishing Expeditors HK's Purposeful Availment of Massachusetts

The Court of Appeals reviews a district court's dismissal for lack of personal jurisdiction based on the prima facie record de novo. See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). In considering whether the plaintiff satisfied his burden of establishing personal jurisdiction, the court "must accept the plaintiff's (properly documented)

18

evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing and construe them in the light most congenial to the plaintiff's jurisdictional claim." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st cir. 2002). Here, the court due wait to the Plaintiff's proffers in rejecting personal jurisdiction.

In this regard, the motion judge erroneously concluded that Keane failed to identify any director or officer of Expeditors HK involved in the formation or negotiation of the 2018 Agreement. This conclusion overlooks clear evidence presented by Keane demonstrating that Mr. Allen Wang, a Director of Expeditors HK and Senior Vice President of Expeditors US, was directly involved in negotiating the terms of Keane's relocation and the 2018 Agreement while Keane was in Massachusetts.

In his second affidavit, Keane attested to the following facts:

- Mr. McGinnis approached Keane and indicated that Mr. Wang wanted the Lenovo account and Keane transferred to Expeditors HK and tasked him to negotiate a deal. (DK at para. 4).
- Mr. McGinnis communicated with Keane numerous times while Keane was in Massachusetts to negotiate the terms of the employment agreement on behalf of Expeditors HK. (Id. at paras. 5-6).
- The 2018 Agreement was presented to Keane in Massachusetts and signed by him there. The agreement was executed by Mr. Wang, a Director of Expeditors HK, who signed on behalf of

19

Expeditors US as "Senior Vice President—North Asia." (Id. para. 7; Dkt. 25-1 at 8).

Defendants themselves acknowledged that Expeditors HK was involved in the negotiation and formation of the 2018 Agreement. They claimed that Expeditors HK was the proper party to the contract, despite the agreement bearing the company seal of Expeditors US on every page. (Dkt. 24 at 2; Dkt. 25 ¶ 7; Dkt. 25-1).

Under established precedent, the actions of an agent or someone in a sufficient apparent agency relationship, even though it falls slightly outside the confines of an agency relationship, are attributable to the principal for purposes of personal jurisdiction, particularly if the principal ratifies the agent's conduct. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55-56 (1st Cir. 2002). The benefits received by Expeditors HK from the transaction, namely, gaining the lucrative Lenovo account and Keane's expertise to run it, further establish its purposeful availment of conducting activities in Massachusetts. See Inn Foods, Inc. v. Equitable Coop. Bank, 45 F.3d 594, 597 n.7 (1st Cir. 1995) ("benefits received are certainly strong evidence that the principal acquiesced in the agent's transaction").

By overlooking this evidence, the District Court failed to consider the full extent of Expeditors HK's contacts with Massachusetts, leading to an erroneous

conclusion that it lacked personal jurisdiction when there were ample facts to prove otherwise before the motion judge.

## B. The Due Process Clause Permits Exercising Personal Jurisdiction Over Expeditors HK

The exercise of personal jurisdiction over Expeditors HK comports with Due Process. The three-prong test requires: (1) relatedness, (2) purposeful availment, and (3) reasonableness. See <u>Daynard</u>, F.3d at 55-56 at 60.

### 1. Relatedness

Keane's claims, including his contractual and tort claims such as negligent infliction of emotional distress, directly relate to Expeditors HK's contacts with Massachusetts. The negotiation and execution of the 2018 Agreement, which is central to all of Keane's claims, occurred in Massachusetts with the direct involvement of Expeditors HK through Mr. Wang. Without this agreement, Keane would not have relocated to Hong Kong, and the subsequent events leading to his claims, including the alleged wrongful termination and emotional distress, would not have occurred. The benefits derived by Expeditors HK, including the acquisition of the lucrative Lenovo account and Keane's expertise, are directly linked to these contacts.

Thus, there is a substantial nexus between Keane's claims and Expeditors HK's activities in Massachusetts, as all of his claims stem from the agreements negotiated and executed in Massachusetts. The coercive nature of the Defendants'

21

conduct—threatening Keane's livelihood if he did not agree to relocate—further underscores the depth of their purposeful engagement with Massachusetts, making it both reasonable and fair for the court to exercise personal jurisdiction over Expeditors HK for all claims.

### 2. Purposeful Availment

Expeditors HK not only purposefully availed itself of the privilege of conducting activities in Massachusetts but did so through coercive and deliberate actions directed at Keane. The company directly repositioned Keane with aggressive negotiations when it applied pressure on him while he was settled in Massachusetts to sign a contract to transfer to Hong Kong. Expeditors HK, through its Director and Senior Vice President Mr. Wang, insisted on transferring Keane and the lucrative Lenovo account to its operation in Hong Kong. When Keane initially declined due to his strong ties to Massachusetts, the Defendants intensified their efforts, ultimately threatening to terminate him if he did not agree to relocate. This ultimatum placed Keane in a position where he faced the loss of his long-standing employment unless he acquiesced to their demands. As such, Expeditors HK voluntarily engaged in activities in Massachusetts and it was foreseeable that it would be subject to involuntary process in the Massachusetts courts. See Adelson v. Hananel, 510 F. 3d 43, 50 (1st Cir. 2007) ("The two key focal points of [purposeful avialment] are voluntariness and foreseeability.").

Such coercive tactics underscore the intentional and forceful nature of Expeditors HK's engagement with Keane in Massachusetts. The company's conduct went beyond mere solicitation, as it exercised leverage over Keane's livelihood to secure his agreement following his initial refusal to change his position. By orchestrating the transfer of Keane and the Lenovo account—assets of substantial value—to Hong Kong, Expeditors HK derived significant benefits directly linked to its activities in Massachusetts. These deliberate and coercive contacts were not based on unilateral actions by Keane but were the result of Expeditors HK's calculated strategy to secure his relocation. Id. (a defendant's contacts must "not be based on unilateral action of another party").

Given these circumstances, Expeditors HK created a substantial connection with Massachusetts, making it not only foreseeable but reasonable that it could be subject to personal jurisdiction in Massachusetts. The company's purposeful and coercive actions demonstrate a clear intent to engage in substantial business dealings within the forum state, thereby invoking the benefits and protections of its laws. This satisfies the purposeful availment requirement, as Expeditors HK should have reasonably anticipated being subject to litigation in Massachusetts arising from its conduct.

### 3. Reasonableness

Exercising jurisdiction over Expeditors HK is reasonable. The Gestalt

factors warrant a finding of jurisdiction. See Ticketmaster-New York, Inc. v.

Alioto, 26 F. 3d 201, 210-212 (1st Cir. 1994). While litigating in Massachusetts

may impose some burden, it is not undue, especially for a global company like

Expeditors HK that operates as a subsidiary of Expeditors US, which has a

substantial presence in Massachusetts. In this regard, the person now managing

the Lenovo account, a central aspect of the dispute, is based in Massachusetts.

This indicates that Expeditors HK continues to have operational ties to

Massachusetts, and thus, appearing in the forum is less burdensome than it might

suggest. Massachusetts has a strong interest in adjudicating disputes involving its

residents and contracts negotiated and executed within the state. See Nowak v. Tak

How Investments, Ltd., 94 F.3d 708, 718 (1st Cir. 1996). The fact that the Lenovo

account, which was the subject of the agreements and Keane's work, is now

managed from Massachusetts further underscores the state's vested interest in

resolving this dispute. Massachusetts seeks to protect the rights of its residents and

ensure that corporations doing business within its borders are held accountable.

Keane has a significant interest in obtaining convenient and effective relief

in his home forum, particularly given the challenges he would face litigating in

Hong Kong. Id. Litigating in Massachusetts allows Keane to access witnesses and

evidence located in the United States, including those involved in the prior false

24

allegation and current management of the Lenovo account. Resolving the dispute

in Massachusetts promotes judicial efficiency, especially given the overlapping

witnesses and evidence located in the U.S., and related litigation in the same

forum. Id. at 718-719. The presence of key operations, such as the ongoing

management of the Lenovo account in Massachusetts, supports the efficient

administration of justice by centralizing proceedings where much of the relevant

activity occurs. Adjudicating the case in Massachusetts aligns with the interests of

justice and fair play and avoids potential difficulties arising from political

instability or differing legal systems in Hong Kong. Id. at 719. Litigating the

matter in Massachusetts acknowledges the interconnected business operations

between Expeditors HK and Expeditors US within the forum state, and it serves

the mutual interests of all sovereigns in promoting substantive social policies, such

as preventing discrimination and enforcing contractual obligations. As such, it is

reasonable to exercise personal jurisdiction over Expeditors HK.


### III. THE DISTRICT COURT ERRED IN DISMISSING COUNTS I, V, AND VI AGAINST EXPEDITORS US FOR LACK OF PERSONAL JURISDICTION

#### A. The Court Misapplied the Relatedness Prong for Personal Jurisdiction

The District Court incorrectly concluded that Keane's non-contract claims

against Expeditors US did not arise out of its activities in Massachusetts. Keane's

Title VII claim (Count I), interference with prospective business relations (Count V), and negligent infliction of emotional distress (Count VI) are deeply rooted in conduct connected to Massachusetts and directly stem from Expeditors US's activities within the state, particularly where Keane had contracted to return to Massachusetts. See United Electric, Radio & Machine Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992) (holding that a defendant need not have a physical presence in the state of Massachusetts, but rather the "[t]est focuses instead upon whether the defendant attempted to participate in the commonwealth's economic life.").

Keane's termination was justified, in part, by the Defendants referencing a prior false allegation of sexual harassment made against him while he was employed by Expeditors US in Massachusetts. This prior incident, which was investigated in Massachusetts and determined to be unfounded, forms an important basis for Keane's claims of discriminatory treatment and wrongful termination. The Defendants' reliance on this Massachusetts-based incident as part of the justification for his termination establishes a direct connection between Keane's claims and Expeditors US's activities in Massachusetts.

Under the Massachusetts long-arm statute, a cause of action "arises from" a defendant's transaction of business in the Commonwealth if the action was made possible by, or lies in the wake of, the transaction of business in the forum state.

Tatro v. Manor Care, Inc., 416 Mass. 763, 771 (1994). In Tatro, the Supreme

Judicial Court of Massachusetts held that a personal injury claim arising from an

incident in California could be brought in Massachusetts because the defendant

hotel had solicited business in Massachusetts, and but for that solicitation, the

plaintiff would not have been injured. Similarly, Keane would not have been

injured had not he been coerced to transfer to Hong Kong by the threat of

termination.

In Nowak, 94 at 716 the First Circuit held that a Hong Kong hotel could be

sued in Massachusetts for a wrongful death that occurred in Hong Kong. The hotel

had solicitated business in Massachusetts, which activities were a "but-for" cause

of the decedent's presence at the hotel when the accident occurred. Id. The court

emphasized that the "arising from" requirement of the Massachusetts long-arm

statute is satisfied if the defendant's transacting business in the forum was a "but

for" cause of the harm. Id. at 713. In doing so, the First Circuit recognized that

the Tatro case had rejected the restrictive analysis of the First Circuit applied to the

Massachusetts long-arm statute. Id. at 713.

Applying these principles, Keane's Title VII and tort claims arise from, and

are directly related to, Expeditors US's activities in Massachusetts. The

Defendants' extensive business conduct in Massachusetts—including the

recruitment and long-term employment of Keane, the negotiation and execution of

27

employment agreements in Massachusetts, and the investigation of the prior false allegation against Keane, are all but-for causes of his claims. But for the Defendants' actions in Massachusetts, Keane would not have been in the position leading to the alleged harms. Moreover, the Defendant's actions in relocating Keane were clearly in the context of performing business in Massachusetts.

Moreover, under the relatedness prong of the Due Process analysis, the defendant's in-state conduct is deemed related if it forms an important or material element of proof in the plaintiff's case. See Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). Here, the prior false allegation investigated in Massachusetts is integral to Keane's claims. It forms part of the basis for alleging discriminatory animus and disparate treatment under Title VII and is central to his tort claims. The Defendants' reliance on this incident demonstrates that their in-forum conduct is a material element of proof.

Further, Keane's tort claims "lie in the wake of" the Defendants' transacting business in Massachusetts. As recognized in Nova Biomedical Corp. v. Moller, 629 F.2d 190, 195 (1st Cir. 1980), even an "isolated and transitory" contact can satisfy the "arising from" requirement if the claim was made possible by the defendant's transaction of business in the forum state. Expeditors US's substantial and sustained business activities in Massachusetts are far from isolated or transitory. Keane's employment, the contractual agreements, and the prior

investigation all occurred in Massachusetts and are the foundation upon which his claims arise.

Additionally, the discriminatory practices alleged by Keane, including the implementation of policies affecting his employment, further connect his claims to Massachusetts. The alleged coercion to relocate, the failure to honor the oral agreement allowing his return to Massachusetts, and the ultimate termination based partly on Massachusetts-related incidents, collectively establish that his claims arise out of the Defendants' purposeful activities in the forum state.

Therefore, the District Court erred by disregarding the substantial connection between Keane's claims and Expeditors US's activities in Massachusetts, which connections form both the factual and legal basis for his non-contract claims. The prior false allegation and the Defendants' subsequent reliance on it are not merely incidental but are pivotal to establishing Keane's claims, satisfying both the Massachusetts long-arm statute and the Due Process Clause's relatedness requirement.

### B. Purposeful Availment and Reasonableness Support Jurisdiction

Expeditors US purposefully availed itself of the privilege of conducting activities in Massachusetts through its long-standing employment of Keane, the negotiation and execution of employment agreements in Massachusetts, and its involvement in events leading to Keane's claims.

Exercising jurisdiction is reasonable for the same reasons discussed above. The burden on Expeditors US is minimal, as it undisputedly operates in Massachusetts. The forum state's interest and Keane's interest in obtaining relief are substantial. Accordingly, the motion judge erred in dismissing Keane's non-contract claims due to lack of personal jurisdiction

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant David Keane respectfully requests that this Court reverse the District Court's dismissal and remand the case for further proceedings.

Respectfully submitted,

/s/ *Jeremia A. Pollard*
Jeremia A. Pollard, Esq.
Hannon Lerner P.C.
184 Main Street
P.O. Box 697
Lee, MA 01238
Phone: 413-243-3311
Email:
jpollard.hannonlerner@gmail

Dated: January 9, 2025

No. 24-1971

DAVID KEANE,
Plaintiff-Appellant,

v.

EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.; EXPEDITORS
HONG KONG LIMITED,

Defendants-Appellees.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief is 30 pages and contains 6,379 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point proportionally spaced, serif typeface (Times New Roman).

I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the words or line print-out.

/s/ Jeremia A. Pollard

Dated: January 9, 2025

# United States Court of Appeals
## For the First Circuit

No. 24-1971

DAVID KEANE,
Plaintiff-Appellant,

v.

EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.; EXPEDITORS
HONG KONG LIMITED,
Defendants-Appellees.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2025, I electronically filed the Appellant's Brief with Addendum, and Appendix with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following counsel for the Appellee of record are registered as ECF Filers and that they will be served by the CM/ECF system:

> Matthew J. Lynch, First Cir. No. 1165531
> Littler Mendelson, P.C.
> One International Place, Suite 2700
> Boston, MA 02110
> mlynch@littler.com
>
> Asha A. Santos, First Cir. No. 1143614
> Littler Mendelson, P.C.
> One International Place, Suite 2700
> Boston, MA 02110
> asantos@littler.com

Pursuant to the Court's order of November 20, 2024, paper copies will be served as directed by the Court.

s/Attorney Jeremia A. Pollard

## United States Court of Appeals
## For the First Circuit

No. 24-1971

DAVID KEANE,

Plaintiff-Appellant,

v.

EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.; EXPEDITORS
HONG KONG LIMITED,

Defendants-Appellees.

ON APPEAL FROM THE JUDGMENT OF
UNITED STATES DISTRICT COURT,
DISTRICT OF MASSACHUSETTS
No. 1:24-cv-10399-PBS
Hon. Patti B. Saris

## APPELLANT DAVID KEANE'S ADDENDUM

Jeremia A. Pollard
Hannon Lerner
184 Main Street
P.O. Box 697
Lee, MA  01238
(413) 243-3311
MA BBO #643382, First Circuit#120002
jpollard.hannonlerner@gmail.com

Attorney for David Keane,
Plaintiff/Appellant

January 9, 2025

## ADDENDUM TABLE OF CONTENTS

Order of Dismissal, Dkt. No. 58 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add 1

Memorandum and Order, Dkt. No. 57. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add 2

Order denying Plaintiff's Motion to Alter or Amend
Dismissing Plaintiff's Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add 25

Hong Kong Employment Ordinance Cap. 57 § 32I. . . . . . . . . . . . . . . . . . Add 26

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID KEANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | No. 24-10399-PBS |
| EXPEDITORS INTERNATIONAL OF | ) | |
| WASHINGTON, INC., and EXPEDITORS | ) | |
| HONG KONG, LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER OF DISMISSAL

SARIS, D.J.

In accordance with the Court's Memorandum and Order dated
August 22, 2024, granting Defendants' motion to dismiss (Dkt. 23),
it is hereby **ORDERED** that the above-entitled action be and hereby
is dismissed.

By the Court,

Robert Farrell, Clerk

8/22/2024                    /s/ Clarilde Karasek
Date                         Deputy Clerk

ADD001

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID KEANE,                          )
                                      )
                    Plaintiff,        )
                                      )
v.                                    )          Civil Action
                                      )          No. 24-10399-PBS
EXPEDITORS INTERNATIONAL OF           )
WASHINGTON, INC., and EXPEDITORS      )
HONG KONG, LIMITED,                   )
                                      )
                    Defendants.       )
                                      )

MEMORANDUM AND ORDER

August 22, 2024

Saris, D.J.

INTRODUCTION

Plaintiff David Keane brings this action against his former employers, Expeditors International of Washington, Inc. ("Expeditors US") and Expeditors Hong Kong Limited ("Expeditors HK"), advancing Title VII and several state law claims arising out of the termination of his employment. For over twenty-five years, Keane worked as an account manager for Defendants. For the first twenty years of his employment, he resided and worked in Massachusetts as an employee of Expeditors US. In 2018, he relocated to Hong Kong, continuing to manage the same account for five more years. According to Keane, Defendants targeted him for termination based on his gender and national origin. Although most

1

ADD002

of the alleged discriminatory conduct occurred in Hong Kong, the negotiation and execution of Keane's initial employment agreement occurred in Massachusetts. Both Defendants move to dismiss for lack of personal jurisdiction and under the doctrine of forum non conveniens. After hearing, the Court **ALLOWS** Defendants' motion to dismiss (Dkt. 23).

### FACTUAL BACKGROUND

Keane's complaint alleges the following facts, which at this stage the Court accepts as true. In 1998, Keane began working for Expeditors US at the company's office in Peabody, Massachusetts. Expeditors US is a Washington-incorporated entity with its principal place of business in Seattle, Washington. It is a Fortune 500 company that provides logistics services and supply chain solutions for clients, such as freight forwarding, vendor consolidation, and cargo insurance. As a Global Account Manager, Keane oversaw the rapid expansion of the account for Lenovo Group Limited, a Chinese technology enterprise. Based on his success with the Lenovo account, in 2016 the company asked Keane to relocate to Hong Kong to manage the account from abroad, which he declined. In early 2018, the company pressured Keane to accept the relocation, this time by threatening termination. Keane reached a mutual oral agreement with Expeditors US that his relocation overseas would be temporary until a replacement employee could be

2

ADD003

found, at which time Keane would be reinstated to his job in the Massachusetts office.

In July 2018, while still living in Massachusetts, Keane signed a written employment agreement that set forth the terms for his relocation and job in Hong Kong. See Dkt. 25-1 ("2018 Agreement"). The 2018 Agreement offered Keane employment with "Expeditors International of Washington Inc. Regional Office –– North Asia" and included a Hong Kong choice of law provision and a Hong Kong forum selection clause. See id. at 2, 8. Keane signed the agreement, as did Allen J. Wang in his role as "Senior Vice President –– North Asia." Dkt. 25-1 at 8-9. In September 2018, Keane relocated to Hong Kong and began working at Expeditors HK. Expeditors HK is a wholly-owned subsidiary of Expeditors US, incorporated in Hong Kong and with its principal place of business in Hong Kong.

In 2019, after about one year of working in Hong Kong, Keane was accused by a co-worker of engaging in unethical business relationships with his client at Lenovo. After investigating, an in-house attorney determined that the accusation lacked evidence. Keane became frustrated that Expeditors HK failed to impose any disciplinary action on the co-worker who brought the false allegations against him. Four years later, on September 21, 2023, Keane attended a company-hosted dinner at a hotel in Hong Kong. After the dinner, Keane was notified of a sexual harassment

3

complaint made against him by a sales representative who was present at the dinner. She alleged that Keane had grabbed her arm and kissed her shoulder without her consent at the dinner.

On September 25, 2023, four days after the company dinner, Expeditors HK presented Keane with a revised employment agreement, which he signed. See Dkt. 25-2 ("2023 Agreement"). The new agreement changed the name of his employer to "Expeditors Hong Kong Limited" and added a provision that stated: "The Company [Expeditors HK] acknowledges that your employment with the Company commenced on 1 September 2018 and will recognize that date for the purpose of all service-related terms." See id. at 2. The 2023 Agreement also stated that it superseded and replaced the 2018 Agreement. See id.

In December 2023, Keane's supervisor informed him at a meeting in the Hong Kong office that his employment was terminated. Following his termination, Keane returned to Massachusetts, where he currently resides.

## PROCEDURAL BACKGROUND

In January 2024, Keane filed an EEOC complaint in Boston, Massachusetts. Keane received a "Notice of the Right to Sue" and timely filed a complaint in this Court. The crux of Keane's allegations is that Defendants "devised and implemented a covert program designed to clandestinely reduce headcount without resorting to layoffs," and it was this program that "dismantled

4

ADD005

critical safeguards intended to prevent discriminatory practices and protect due process." Dkt. 1 at 2. Keane's complaint also alleges that Defendants engaged in a discriminatory pattern of terminating American employees from the Hong Kong office. See id. at 36. Keane alleges the following six counts in his complaint: (I) violation of Title VII of the Civil Rights Act against both Defendants; (II) breach of oral contract against Expeditors US; (III) breach of the 2018 Agreement against Expeditors US; (IV) breach of the 2023 Agreement against Expeditors HK; (V) interference with prospective business relations against both Defendants; and (VI) negligent infliction of emotional distress against both Defendants.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the defendant. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). "Under the prima facie standard, the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008). Courts "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional

5

showing and construe them in the light most congenial to the plaintiff's jurisdictional claim." Id. (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)) (cleaned up). In order to make a prima facie showing of jurisdiction, "the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995).

## DISCUSSION

### I.  Personal Jurisdiction

Defendants move to dismiss Keane's complaint on the grounds that the Court lacks personal jurisdiction. To establish personal jurisdiction over both Expeditors US and Expeditors HK, Keane "must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). "Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, . . . a determination under

6

the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017). Section 3(a) of the Massachusetts long-arm statute, upon which Keane relies, provides for the exercise of jurisdiction over a defendant when the cause of action at issue arises from its transaction of business in the Commonwealth. See Mass. Gen. Laws ch. 223A, § 3(a). To find jurisdiction pursuant to Section 3(a), "the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must have arisen from the defendant's transaction of such business." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001). The primary inquiry is "whether the defendant attempted to participate in the commonwealth's economic life." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992).

Under the due process analysis, constitutional due process demands that the defendant must have sufficient contacts with the forum state such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945). Here, Keane makes no claim for general jurisdiction. See Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005) (explaining that general jurisdiction requires defendants have continuous and systematic

7

contacts with the forum state). Therefore, the Court's analysis focuses on specific personal jurisdiction, which involves three elements: relatedness, purposeful availment, and reasonableness. Daynard, 290 F.3d at 60.

Under the relatedness element, courts consider whether the claim directly arises out of, or relates to, the defendant's forum state activities. See id. at 61. "[T]he defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case." Harlow, 432 F.3d at 61 (cleaned up). For breach of contract claims, courts look to whether "the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999). For tort claims, courts "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Id.

Under the purposeful availment element, courts consider whether "the defendant's in-state contacts [] represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 60. "The two key focal points of this concept are voluntariness and foreseeability." Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007). Voluntariness requires that the defendant's contacts be

8

deliberate and "not based on the unilateral actions of another party." Id. Foreseeability requires that the contacts must be of a nature that the defendant could "reasonably anticipate being haled into court there." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Finally, under the reasonableness element, "the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." Daynard, 290 F.3d at 60. The First Circuit considers the following Gestalt factors to assess reasonableness:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 69 (1st Cir. 2014) (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994)). This part of the analysis "evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster, 26 F.3d at 210.

### A. Expeditors HK's Contacts

Keane fails to establish a prima facie case of personal jurisdiction over Expeditors HK. Expeditors HK is a Hong Kong company registered to do business in Hong Kong and maintains a

9

principal office in Hong Kong. The Regional Vice President for Expeditors HK, Kaiser Lam, states in his affidavit that "Expeditors HK does not transact business in Massachusetts, did not contract to supply services or things in Massachusetts, does not regularly solicit business or engage in a persistent course of conduct in Massachusetts, and does not have an interest in using or possessing real property in Massachusetts." Dkt. 25 at 2. In contrast, Keane recalls that while he was employed at Expeditors HK, he "arranged some sales and deliveries to customers located in Massachusetts" and that "Expeditors HK had a revenue sharing agreement with Expeditors [US] regarding all air shipments from Hong Kong to Massachusetts." Dkt. 30 at 4; Dkt. 42 at 3.

Even assuming Expeditors HK arranged some shipments to Massachusetts, Keane's discrimination, breach of contract, and tort claims do not arise from those contacts. Instead, the factual allegations underpinning Keane's claims against Expeditors HK -- for example, the alleged discrimination against American foreigners, the company dinner party, the sexual harassment complaint, the investigation, the disciplinary hearing, and the resulting termination -- all occurred in Hong Kong, not Massachusetts. Keane has not met his burden under Section 3(a) of the Massachusetts long-arm statute because his causes of action do not arise from Expeditors HK's activities in Massachusetts. See Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291

10

(D. Mass. 2017) ("[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State."). Nor has Keane sustained his burden of establishing the relatedness element of the due process analysis.

In an attempt to connect Expeditors HK to Massachusetts, Keane argues that both "Defendants intentionally engaged with [Keane] while he was based in Massachusetts, with the aim of transferring him and the lucrative Lenovo account that he managed to Expeditors HK." Dkt. 29 at 10. However, as set forth in Keane's affidavit, it was Brian McGinnis, a director of Expeditors US, who approached Keane numerous times about relocating to Hong Kong and convinced him to sign the 2018 Agreement with "Expeditors International of Washington Inc. Regional Office –- North Asia." See Dkt. 30 at 2–3. The agreement was signed by Allen J. Wang in his role as "Senior Vice President -- North Asia." Dkt. 25-1 at 8. Keane does not identify any director or officer of Expeditors HK involved in the formation or negotiation of the 2018 Agreement.

Because Expeditors HK does not have the requisite minimum contacts with Massachusetts, the Court need not reach the reasonableness element. See Sawtelle, 70 F.3d at 1394 ("[W]e note that a failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness"). Keane has not carried his burden in showing that the Court could

11

ADD012

properly exercise personal jurisdiction over Expeditors HK. Accordingly, the motion to dismiss with respect to Expeditors HK is **ALLOWED**.

### B. Expeditors US's Contacts

The Court next turns to analyze whether exercising jurisdiction over Expeditors US is proper under the Massachusetts long-arm statute and the Due Process Clause. Expeditors US maintains a facility in Peabody, Massachusetts, which at the time of Keane's employment had approximately 120 employees. Keane himself worked at this Massachusetts facility for nearly two decades. Brian McGinnis, a director of Expeditors US, approached Keane when he was living in Massachusetts and negotiated the 2018 Agreement that resulted in Keane's relocation to Hong Kong. Expeditors US's actions in Massachusetts therefore satisfy the transacting-business requirement under the long-arm statute. See Mass. Gen. Laws ch. 223A, § 3(a). By hiring employees and forming contracts in the state, Expeditors US also invoked the benefits and privileges of doing business in Massachusetts, thus satisfying the purposeful availment inquiry under the due process analysis.

To determine whether Keane's claims arise from the alleged in-forum activity, the Court considers each of the five claims brought against Expeditors US individually.[1] See Phillips Exeter,

---

[1] Count IV alleges breach of the 2023 Agreement and was brought against Expeditors HK only.

12

ADD013

196 F.3d at 289 ("Questions of specific jurisdiction are always tied to the particular claims asserted."). Keane's three non-contract claims arise directly out of his allegedly wrongful termination and the investigation and disciplinary proceedings that preceded it. Specifically, the Title VII claim (Count I) alleges that Keane "was terminated from his employment due to his sex and/or national origin, in violation of Title VII of the Civil Rights Act." Dkt. 1 at 99. The interference claim (Count V) alleges that Expeditors US interfered with Keane's prospective business relations with clients by labelling him a "sex harasser" during their internal investigation and disciplinary proceedings. Id. at 111. And the claim of negligent infliction of emotional distress (Count VI) similarly alleges that Expeditors US subjected Keane to emotional distress by "falsely accusing [Keane] of sexual harassment, failing to conduct a fair investigation, unlawfully summarily dismissing him and publicizing the false allegations without just cause." Id. at 113. Given that the investigation, disciplinary hearing, and termination all occurred in Hong Kong, Counts I, V, and VI do not arise out of Expeditors US's forum state activities and are therefore dismissed for lack of personal jurisdiction under both the Massachusetts long-arm statute and the Due Process Clause. See Azumi LLC v. Lott & Fischer, PL, 621 F. Supp. 3d 219, 224 (D. Mass. 2022) (finding no jurisdiction under long-arm statute where claims did not arise from defendant's

13

purported connections to Massachusetts); Phillips, 530 F.3d at 27 (noting that plaintiff must demonstrate that all three jurisdictional elements under the Due Process clause are satisfied).

The inquiry is different, however, with respect to Keane's contract claims against Expeditors US (Counts II and III). Where the cause of action is an alleged breach of contract, the Court considers whether the defendant's activity in the forum state was "instrumental either in the formation of the contract or its breach." See Phillips Exeter, 196 F.3d at 289. In Adelson v. Hananel, the First Circuit affirmed a district court's finding of relatedness where the contract between the parties was formalized and entered into in Massachusetts, the forum state. 510 F.3d at 49. Here, both the alleged oral contract and the 2018 Agreement were negotiated and entered into while Keane was living in Massachusetts. Keane states that Brian McGinnis, a director of Expeditors US, targeted and pressured him into relocating to Hong Kong. Keane alleges that he eventually relented upon threat of termination and entered into a mutual oral agreement with Expeditors US. According to Keane, his "eventual return to his original position in the Massachusetts office was a fundamental component of the oral agreement." Dkt. 1 at 102. Keane and Expeditors US then negotiated and signed the 2018 Agreement, which set forth the terms of his employment in Hong Kong. Defendants

14

argue that the mere act of signing the agreement in Massachusetts was incidental to the overall formation of the agreement. However, the complaint alleges more than just the signing of the agreement in Massachusetts -- it alleges that Keane was pressured into relocating multiple times from 2016 to 2018 and that difficult negotiations were conducted in Massachusetts prior to the execution of the 2018 Agreement. See Adelson, 510 F.3d at 49 ("[N]othing could be more instrumental in the formation of a contract than the literal act of forming the contract itself."). The Court finds that Keane's contract claims against Expeditors US arise from and are related to Expeditors US's activities within the forum state. Therefore, both requirements of the Massachusetts long-arm statute have been met with respect to Counts II and III. The relatedness element of the due process analysis is also satisfied with respect to these counts.

## C. Reasonableness

The final question is whether exercising jurisdiction over Expeditors US with respect to Keane's contract claims is reasonable. A number of the Gestalt factors weigh in favor of a finding of reasonableness. First, Keane, who currently resides in Massachusetts, has a compelling interest in bringing his claim in the forum state. See Ticketmaster, 26 F.3d at 211 (noting that courts "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience"). Second, there is

15

no unusual burden for Expeditors US, a domestic Fortune 500 company, to appear in a forum state where the company already operates a facility. Third, Massachusetts has an interest in adjudicating claims involving contracts negotiated and formed in the state. Thus, with respect to Counts II and III, Expeditors US's contacts with Massachusetts establish "minimum contacts" in such a manner that it does not "offend traditional notions of fair play and substantial justice" for Keane to bring his contract claims in the forum state. See Int'l Shoe, 326 U.S. at 316.

### D. Alter Ego Theory

Finally, Keane alleges that Expeditors HK is subject to personal jurisdiction as Expeditors US's alter ego. In his complaint, Keane alleges that "Expeditors HK functions as an **extension and alter ego of the US parent company**" because "Expeditors HK shares common management with Expeditors [US] and the CEO of Expeditors is a director of Expeditors HK" and "Expeditors HK's management structure is so intertwined with Expeditors that they effectively operate as a single entity." Dkt. 1 at 7-8, 96. For example, Keane contends that Allen J. Wang serves as Senior Vice President of both Defendants, and that Jeffrey Dickerman serves as Vice President and General Counsel of both companies as well.

In general, courts "have presumed the institutional independence of parent and subsidiary when determining whether

16

ADD017

jurisdiction may be asserted over the parent solely on the basis of the subsidiary's contacts with the forum." Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990). The record reflects that Expeditors HK "maintains its own ledgers and accounting books; prepares its own business plans, payroll, budget and financial statements . . . and controls the decisions regarding hiring and firing of its employees." Dkt. 25 at 3. Besides pointing to the overlapping leadership of the companies, Keane offers no evidence to refute the fact that Expeditors US and Expeditors HK observe corporate formalities as distinct entities. See Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980) (holding that "allegations of interlocking directorates and stock ownership will not alone suffice" to support an alter-ego theory for jurisdictional purposes). Keane has not provided sufficient evidence upon which the Court could plausibly find jurisdiction over Expeditors HK.

## II.  Forum Non Conveniens

Defendants also move to dismiss Keane's claims pursuant to the doctrine of forum non conveniens. "The doctrine of *forum non conveniens* . . . permits a court to dismiss a case because the chosen forum (despite the presence of jurisdiction and venue) is so inconvenient that it would be unfair to conduct the litigation in that place." Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 140 (1st Cir. 2021) (quoting Howe v. Goldcorp Invs., Ltd., 946 F.2d

17

944, 947 (1st Cir. 1991)). A dismissal on these grounds requires the plaintiff to file his suit in a more convenient forum in order to obtain relief. Id. As the party moving for dismissal, Expeditors US "bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Imamura v. Gen. Elec. Co., 957 F.3d 98, 106 (1st Cir. 2020) (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)).

First, the Court looks to whether Hong Kong provides an adequate alternative forum for this dispute. An adequate alternative forum exists when "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." Id. (quoting Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991)). Here, Defendants are "amenable to process in Hong Kong because [they] conduct[] business in the country." Carpi Trading Corp. v. Bank Bumiputra Malaysia Berhad, 812 F. Supp. 1041, 1044 (N.D. Cal. 1993). Not only is Expeditors HK a Hong Kong-based company, but Expeditors US agreed to "submit to the non-exclusive jurisdiction of the Courts of the [Hong Kong Special Administrative Region]" for claims arising out of the 2018 Agreement or Keane's employment. Dkt. 25-1 at 8; see Contact Lumber Co. v. P.T. Moges

18

Shipping Co., 918 F.2d 1446, 1450 (9th Cir. 1990) (affirming dismissal where defendants submitted to jurisdiction in alternative forum).

Keane argues that Hong Kong is not an adequate forum because its legal system does not allow for contingency fee arrangements and its discovery procedures are more restrictive than in the United States. However, such procedural differences are not sufficient for finding an alternative forum to be inadequate. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 250-55 (1981) (holding that "dismissal on grounds of forum non conveniens may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery"). Keane also argues that Hong Kong courts are not appropriate due to political instability in the region. However, "[n]umerous courts . . . have found Hong Kong to be an adequate alternative forum for contract and tort disputes." Easy Spirit LLC v. DBS Bank LTD, No. 19-7290, 2019 WL 13133363, at *4 (C.D. Cal. Dec. 10, 2019) (listing cases) ("Plaintiff's descriptions of political unrest in Hong Kong do not demonstrate that the unrest has rendered the judicial system incapable of resolving Plaintiff's claim."). Thus, the Court finds that Hong Kong provides an adequate alternative forum to adjudicate Keane's contract claims.

In addition to an adequate available forum, "the defendant must show that the compendium of factors relevant to the private

19

and public interests implicated by the case strongly favors dismissal." Iragorri, 203 F.3d at 12. Relevant private interest factors include:

> the relative ease of access to sources of proof; availability [and cost] of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious[,] and inexpensive.

Imamura, 957 F.3d at 107 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Here, the locus of injury is in Hong Kong. In his complaint, Keane alleges that Expeditors US breached the oral agreement and the 2018 Agreement by wrongfully terminating him, not conducting a fair disciplinary proceeding, and failing to reinstate him to his job in Massachusetts. The 2018 Agreement provides that Keane could be "dismissed without notice and payment" from the company for misconduct, which included "[v]iolation of any of the policies articulated in the Company's Codes of Conduct" and "[s]erious or persistent breach [] of any of the terms and conditions of employment." Dkt. 25-1 at 5. Thus, determining whether Defendants terminated Keane with or without cause is integral to adjudicating Keane's contract claims. The events leading up to Keane's termination all occurred in Hong Kong, including the alleged sexual harassment, the investigation, the disciplinary proceeding, and the termination itself. Although Keane argues, without support, that witnesses are located around

20

ADD021

the world, the Court finds that the location of evidentiary sources is at the center of gravity of the events surrounding Keane's termination, which lies in Hong Kong.

Moreover, as explained above, because the Court does not have jurisdiction over Expeditors HK or Keane's non-contract claims against Expeditors US, Keane would have to pursue those claims in Hong Kong. There is a benefit to resolving Keane's contract claims in the same forum and proceeding as his other claims, not only to avoid inconsistent findings or rulings, but also to save litigants the expense of parallel proceedings.

The public factors also weigh in favor dismissal. Relevant public factors include:

> the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Imamura, 957 F.3d at 107 (quoting Piper, 454 U.S. at 241). Here, the 2018 Agreement is expressly governed by Hong Kong law. See Dkt. 25-1 at 8 ("This agreement and your employment shall be governed by and construed in accordance with the laws of the Hong Kong Special Administrative Region (HKSAR)."). In general, there is a preference for a forum to apply laws with which it is familiar. See Dow Jones & Co. v. Juwai Ltd., No. 21-7284, 2023 WL 2561588,

21

'

at *11 (S.D.N.Y. Mar. 17, 2023) ("While this Court can address questions of Hong Kong law, Hong Kong courts are plainly better suited to the task. This alone is a strong — though not dispositive — factor favoring dismissal."). Finally, although the contracts at issue were executed in Massachusetts, Hong Kong has a greater interest in resolving what is, at its core, an employment dispute involving a Hong Kong employee and a Hong Kong company.

In summary, Defendants have met their burden of showing that Hong Kong is an adequate alternative forum for Keane's claims, and the balance of private and public interest factors weigh in favor of adjudication in a foreign forum. Although deference is given to Keane's preference for his home forum, Hong Kong is the more appropriate and convenient forum for adjudicating the dispute in its entirety. Accordingly, Keane's contract claims against Expeditors US (Counts II and III) are dismissed on the ground of forum non conveniens.[2]

### ORDER

For the reasons stated above, the Court **ALLOWS** the motion to dismiss all claims against Expeditors HK for lack of personal jurisdiction. The Court also **ALLOWS** the motion to dismiss Counts I

---

[2] After the motion to dismiss hearing, both parties filed supplementary briefing regarding Keane's intention of seeking leave to amend his complaint to add a Racketeer Influenced and Corrupt Organizations ("RICO") Act claim and a promissory estoppel claim. See Dkts. 51, 54. Since the action is dismissed in its entirety, the Court need not address these arguments.

(Title VII claim), V (interference with prospective business relations), and VI (negligent infliction of emotional distress) against Expeditors US for lack of personal jurisdiction. Finally, the Court **ALLOWS** the motion to dismiss Counts II (breach of oral contract) and III (breach of 2018 Agreement) against Expeditors US on the ground of forum non conveniens.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

23

ADD024

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

David Keane,

        Plaintiff,

v.

Expeditors International of
Washington, Inc. and
Expeditors Hong Kong Limited,

        Defendants.

No. 1:24-CV-10399-PBS

**PLAINTIFF'S MOTION TO ALTER OR AMEND ORDER DISMISSING
PLAINTIFF'S CASE UNDER FED. R. CIV. P. 59(e) OR, IN THE
ALTERNATIVE, TO CORRECT CLERICAL MISTAKES IN THE ORDER UNDER
FED. R. CIV. P. 60**

Plaintiff David Keane ("Keane"), by and through his undersigned counsel, hereby respectfully moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 59(e), to alter or amend its Memorandum and Order dated August 22, 2024 (Dkt. 57) granting Defendant's Motion to Dismiss (Dkt. 23) and Order of Dismissal (Dkt. 58). In the alternative, Keane moves this Court, pursuant to Federal Rule of Civil Procedure 60, to modify the Memorandum and Order to correct certain clerical mistakes and oversights in the Court's opinion.

WHEREFORE, Plaintiff David Keane respectfully requests **that this Honorable Court:**

10/18/24
Denied

Patti B Saris

Employment Ordinance

# Part VIA

# Employment Protection

*(Part VIA added 75 of 1997 s. 4. Format changes—E.R. 3 of 2017)*

32A.    **Employee's entitlement to employment protection**

(1)    An employee may be granted remedies against his employer under this Part—

(a)    where he has been employed under a continuous contract for a period of not less than 24 months ending with the relevant date and he is dismissed by the employer because the employer intends to extinguish or reduce any right, benefit or protection conferred or to be conferred upon the employee by this Ordinance;

(b)    where he is employed under a continuous contract and the employer, without his consent and, in the absence of an express term in his contract of employment which so permits, varies the terms of his contract of employment because the employer intends to extinguish or reduce any right, benefit or protection conferred or to be conferred upon the employee by this Ordinance; or

(c)    where he is dismissed by the employer other than for a valid reason within the meaning of section 32K and in contravention of—

(i)    section 15(1), 21B(2)(b), 33(4B) or 72B(1);

(ii)    section 6 of the Factories and Industrial Undertakings Ordinance (Cap. 59); or

(iii)    section 48 of the Employees' Compensation Ordinance (Cap. 282),

Verified Copy

Employment Ordinance

期)—

    (a)  in relation to the termination of employment of an employee, has the same meaning as in section 2(1); and

    (b)  in relation to the employer varying the terms of the contract of employment of an employee, means the date on which that variation takes effect.

**32G.  Death of employer or employee**

For the purposes of this Part, Part I of the Eighth Schedule shall have effect in relation to the death of an employer and Part II of that Schedule shall have effect in relation to the death of an employee.

**32H.**  *(Repealed 51 of 2000 s. 4)*

**32I.  Claim for remedies**

Notwithstanding anything in this Part, an employee shall not be entitled to remedies under this Part unless—

    (a)  the employee has made a claim for such remedies by notice in writing given to the employer before the end of the period of 3 months beginning with the relevant date, or within such extended period not exceeding 6 months as the Commissioner may permit; or

    (b)  a question as to the right of the employee to such remedies has been made the subject of a claim filed with the Registrar of the Labour Tribunal in accordance with Part 4 of the Labour Tribunal Ordinance (Cap. 25) before the end of the period of 9 months beginning with the relevant date.

*(Amended E.R. 1 of 2013)*

**32J.  Jurisdiction of Labour Tribunal**

Verified Copy