# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

**CASE NO. 24-1971**

## DAVID KEANE,

**Plaintiff-Appellant,**

v.

## EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.; EXPEDITORS HONG KONG LIMITED,

**Defendants-Appellees.**

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

_____

BRIEF OF APPELLEES EXPEDITORS INTERNATIONAL OF
WASHINGTON, INC. AND EXPEDITORS HONG KONG LIMITED

_____

Asha A Santos, First Cir. No. 1143614
Matthew J. Lynch, First Cir. No. 1165531
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, Massachusetts 02110
Telephone:  617.378.6000
Facsimile:  617.737.0052
asantos@littler.com
mlynch@littler.com

*Attorneys for Defendants-Appellees,*
*Expeditors International of Washington, Inc.*
*and Expeditors Hong Kong Limited*

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, defendant-appellee Expeditors International of Washington, Inc., by its undersigned counsel, states that it has no parent corporation.  BlackRock, Inc., a publicly held corporation, owns 10% or more of Expeditors' stock.  No other publicly held corporation owns 10% or more of Expeditors' stock.

Expeditors Hong Kong Limited is a wholly owned subsidiary of Expeditors International of Washington, Inc. No other publicly held corporation owns 10% or more of Expeditors Hong Kong Limited's stock.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ..................................................................i

TABLE OF CONTENTS.................................................................... ii

TABLE OF AUTHORITIES ...............................................................iv

I.      REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ................1

II.     STATEMENT OF ISSUES PRESENTED FOR REVIEW..........................2

III.    STATEMENT OF THE CASE ....................................................4

        A.      Statement of the Facts .................................................4

                1.      Keane's Employment & Transfer to Hong Kong .....................4

                2.      Keane Allegedly Harasses a Female Colleague at a Hong
                        Kong Hotel .................................................6

        B.      Procedural History.................................................8

IV.     SUMMARY OF THE ARGUMENT .............................................11

V.      ARGUMENT...................................................................13

        A.      Standard of Review ........................................................13

        B.      The District Court Properly Held That It Could Not Exercise
                Specific Personal Jurisdiction Over Expeditors HK .........................14

        C.      The District Court Properly Declined to Exercise Specific
                Personal Jurisdiction Over Keane's Non-Contract Claims...............19

                1.      Keane's Non-Contract Claims Do Not Relate to
                        Expeditors US's Contacts in Massachusetts.............................20

                2.      Defendants Did Not Purposefully Avail Themselves of
                        Massachusetts Law ................................................22

                3.      The Exercise of Personal Jurisdiction Over Defendants Is
                        Not Reasonable ........................................................26

D.    The District Court Did Not Abuse Its Discretion in Dismissing Keane's Contract Claims Against Expeditors US Pursuant to Forum Non Conveniens ....................................................30

    1.    Hong Kong is an Adequate Available Forum..........................30

    2.    The District Court Did Not Abuse Its Discretion In Finding that the Private Factors Weigh in Favor of Dismissal Pursuant to Forum Non Conveniens ......................33

    3.    The District Court Did Not Abuse Its Discretion In Finding that the Public Factors Weigh in Favor of Dismissal Pursuant to Forum Non Conveniens ......................37

E.    The District Court Did Not Abuse Its Discretion in Denying Keane's Motion to Alter or Amend the Judgment.............................39

VI.    CONCLUSION............................................................................41

RULE 32(G) CERTIFICATE OF COMPLIANCE................................................42

CERTIFICATE OF SERVICE ..............................................................................43

ADDENDUM ......................................................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A Corp. v. All Am. Plumbing, Inc.,
  812 F.3d 54 (1st Cir. 2016)................................................................14

Adelson v. Hananel,
  510 F.3d 43 (1st Cir. 2007)................................................................13

BCCTC Assocs., Inc. v. Summerdale/AAHFI, L.P.,
  656 F. Supp. 2d 208 (D. Mass. 2009)..............................................22, 23, 24, 25

Beijing Abace Biology Co., Ltd. v. Zhang,
  122 F.4th 448 (1st Cir. 2024)................................................................32

United States v. Bongiorno,
  106 F.3d 1027 (1st Cir. 1997)................................................................23

Bowen v. eLanes New Hampshire Holdings, LLC,
  166 F. Supp. 3d 104 (D. Mass. 2015)......................................................27, 29

Bridge Street Auto., Inc. v. Green Valley Oil, LLC,
  985 F. Supp. 2d 96 (D. Mass. 2013)................................................................17

Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad,
  812 F. Supp. 1041 (N.D. Cal. 1993)................................................................33

Chen v. United States Sports Acad., Inc.,
  956 F.3d 45 (1st Cir. 2020)................................................................13, 22

Cook v. Champion Shipping AS,
  463 F. Appx. 626 (9th Cir. 2011) ................................................................33

Cortes-Rivera v. Dep't of Corr. & Rehab. of Comm. of Puerto Rico,
  626 F.3d 21 (1st Cir. 2010)................................................................23

Curran v. Cousins,
  509 F.3d 36 (1st Cir. 2007)................................................................17

iv

Curtis v. Galakatos,
    19 F.4th 41 (1st Cir. 2021)....................................................................35

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,
    290 F.3d 42 (1st Cir. 2002)............................................................17, 18

Dow Jones & Co. v. Juwai Ltd.,
    No. 21-7284, 2023 WL 2561588 (S.D.N.Y. March 17, 2023)...................28, 37

Easy Spirit LLC v. DBS Bank LTD,
    No. 19-8290, 2019 WL 13133363 (C.D. Cal. Dec. 10, 2019) ...........................33

Fed. Ins. Co. v. XTRA Intermodal, Inc.,
    No. 14-cv-14010-ADB, 2015 WL 4275181 (D. Mass. July 15,
    2015) .........................................................................................27

Feliciano-Hernandez v. Pereira-Castillo,
    663 F.3d 527 (1st Cir. 2011)..............................................31, 39, 40

Ford v. Brown,
    319 F.3d 1302 (11th Cir. 2003) .........................................................33

U.S. ex rel. Gagne v. City of Worcester,
    564 F. Supp. 2d 81 (D. Mass. 2008)....................................................39

Harlow v. Children's Hosp.,
    432 F.3d 50 (1st Cir. 2005).......................................................*passim*

Howe v. Goldcorp Invs., Ltd.,
    946 F.2d 944 (1st Cir. 1991)......................................................*passim*

Imamura v. Gen. Elec. Co.,
    371 F. Supp. 3d 1 (D. Mass. 2019)....................................................30

Inn Foods, Inc. v. Equitable Coop. Bank,
    45 F.3d 594 (1st Cir. 1995)..............................................................17

Iragorri v. Int'l Elevator, Inc.,
    203 F.3d 8 (1st Cir.2000)..................................................................13

K.O. v. Sessions,
    436 F. Supp. 3d 442 (D. Mass. 2020)................................................14

Markel Am. Ins. Co. v. Diaz-Santiago,
    674 F.3d 21 (1st Cir. 2012) .................................................................14

Mercier v. Sheraton Int'l, Inc.,
    981 F.2d 1345 (1st Cir. 1992) .............................................................37

Ouimette v. Moran,
    942 F.2d 1 (1st Cir. 1991) .......................................................16, 17, 31

Palmer v. Champion Mortg.,
    465 F.3d 24 (1st Cir. 2006) .................................................................40

PFIP, LLC v. Planet Fitness Enters., Inc.,
    No. 04-250-JD, 2004 WL 2538489 (D.N.H. Nov. 10, 2004) ............29

Phillips Exeter Acad. v. Howard Phillips Fund,
    196 F.3d 284 (1st Cir. 1999) ...................................................19, 20, 25

Phillips v. Prairie Eye Ctr.,
    530 F.3d 22 (1st Cir. 2008) ...........................................................25, 26

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981) .............................................................................31

Platten v. HG Bermuda Exempted Ltd.,
    437 F.3d 118 (1st Cir. 2006) .....................................................20, 21, 22

Rosario-Mendez v. Hewlett Packard Caribe,
    660 F. Supp. 2d 229 (D.P.R. 2009) .....................................................40

Sawtelle v. Farrell,
    70 F.3d 1381 (1st Cir. 1995) .....................................................21, 22, 24

SCVNGR, Inc. v. Punchh, Inc.,
    478 Mass. 324 (2017) ..........................................................................14

Snöfrost AB v. Håkansson,
    353 F. Supp. 3d 99 (D. Mass. 2018) ...........................................*passim*

States Res. Corp. v. The Architectural Team, Inc.,
    433 F.3d 73 (1st Cir. 2005) .........................................15, 16, 17, 31

Ticketmaster-New York, Inc. v. Alioto,
    26 F.3d 201 (1st Cir. 1994)..........................................................26, 27, 29

Trabal Hernandez v. Sealand Servs., Inc.,
    230 F. Supp. 2d 258 (D.P.R. 2002) ....................................................39

Turan v. Universal Plan Inv. Ltd.,
    70 F. Supp. 2d 671 (E.D. La. 1999).....................................................33

Violette v. Smith & Nephew Dyonics,
    62 F.3d 8 (1st Cir. 1995).......................................................................16

Watkins v. Ponte,
    987 F.2d 27 (1st Cir. 1993)........................................................16, 17, 31

**Statutes**

G.L. c. 223A, § 3...........................................................................................14

Race Discrimination Ordinance Cap. 602(70)(4)(a)-(g) (H.K.).........................28, 31

Sex Discrimination Ordinance, Cap. 480(76)(3A)(a)-(g) (H.K.)......................28, 31

**Other Authorities**

Equal Opportunities Comm'n v. Dir. of Ed. [2001], 2 HKLRD 690
    [1]-[3] (C.F.I.) ...................................................................................28

Tadjudin v. Bank of Am. Nat'l Assoc. [2008], HKCU 1842 [16]-[17]
    (C.F.I.)...................................................................................................31

11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal
    Practice and Procedure* § 2810.1 (2d ed. 1995) ................................39

https://www.uscourts.gov/statistics-reports/federal-court-
    management-statistics-december-2023 (last visited January 20,
    2025) ...................................................................................................38

# I.  REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Pursuant to Local Rule 34.0, defendants-appellees Expeditors International of Washington, Inc. and Expeditors Hong Kong Limited respectfully request oral argument to assist this Court in deciding this case. This appeal involves complex and significant issues of personal jurisdiction and *forum non conveniens*.  Oral argument will assist this Court to further analyze the complexities of these jurisdictional issues on appeal.  These issues are also expected to have broad interest for cases throughout the First Circuit.

## II.  <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.      Whether the District Court properly held that defendant/appellee Expeditors Hong Kong Limited ("Expeditors HK") lacked sufficient minimum contacts with Massachusetts to justify the exercise of specific personal jurisdiction, when Expeditors HK is a Hong Kong company that does not transact business in Massachusetts and plaintiff/appellant David Keane's ("Keane") claims against Expeditors HK arise out of events that allegedly occurred in Hong Kong, where Keane lived and worked as an employee of Expeditors HK.

2.      Whether the District Court properly held that defendant/appellee Expeditors International of Washington, Inc. ("Expeditors US") is not subject to specific personal jurisdiction in Massachusetts for Keane's claims of discrimination, intentional interference with prospective business relations and negligent infliction of emotional distress, when these claims arise out of Keane's alleged sexual harassment of a Hong Kong colleague at a company dinner in Hong Kong, the investigation into these allegations and disciplinary proceedings occurred in Hong Kong, and the termination of Keane's employment from Expeditors HK occurred in Hong Kong.

3.      Whether the District Court abused its discretion in dismissing Keane's contract claims against Expeditors US pursuant to *forum non conveniens*, when Keane alleged that his termination constituted a breach of the covenant of good faith

and fair dealing because his termination violated his rights under Hong Kong law and that Expeditors US breached an oral agreement that his relocation to Hong Kong would be temporary.

4.     Whether the District Court abused its discretion in denying Keane's motion to alter or amend the judgment dismissing his Complaint due to lack of personal jurisdiction and *forum non conveniens*, when Keane's motion did not demonstrate that newly discovered evidence (not previously available) had come to light or that the District Court committed a manifest error of law.

### III.  STATEMENT OF THE CASE

**A.    Statement of the Facts**

**1.    *Keane's Employment & Transfer to Hong Kong***

Defendant/appellee Expeditors International of Washington, Inc. ("Expeditors US") is a corporation organized under the laws of the State of Washington and maintains a principal office in Washington.  (A065 ¶ 5.)  In 1998, Expeditors US hired plaintiff/appellant David Keane ("Keane") to work in its Massachusetts office. (Complaint ¶ 21 (Dist. Ct. Doc. No. 1).)  Keane worked for Expeditors US in Massachusetts until September 2018, when he relocated to Hong Kong to work for defendant/appellee Expeditors Hong Kong Limited ("Expeditors HK" collectively, with Expeditors US, "Defendants"[1]).  (Id. ¶ 42.)  Expeditors HK is organized under the laws of Hong Kong and maintains a principal office in Hong Kong.  (A046 ¶ 15.) Expeditors HK does not transact business in Massachusetts, does not contract to supply services or things in Massachusetts, does not regularly solicit business or engage in a persistent course of conduct in Massachusetts, and does not have an interest in using or possessing real property in Massachusetts.  (Id. ¶ 14.)  Expeditors

---

[1] Pursuant to L.R. 28(d), Expeditors US and Expeditors HK refer to themselves collectively as "Defendants," the designation used in the District Court when referring to both entities at once.

HK further does not have an office in Massachusetts, does not have any employees in Massachusetts, and is not registered to do business in Massachusetts. (A047 ¶ 17.)

When Keane relocated to Hong Kong in 2018, he signed an employment agreement ("the 2018 Agreement") with Expeditors HK. (A045-46 ¶ 7, A049-56.) Keane alleges that he communicated with Brian McGinnis, an Expeditors US employee, regarding the 2018 Agreement while Keane still lived in Massachusetts and that he signed the agreement in Massachusetts. (A068 ¶¶ 4-5, A069-70 ¶ 7.) However, it is undisputed that the purpose of the agreement was to provide for Keane's relocation to, and employment in, Hong Kong. (Complaint ¶¶ 42-43.) Keane's performance of the 2018 Agreement—*i.e.*, his continued employment—occurred in Hong Kong. (Id. ¶¶ 42-43, 47-50.)

By signing the 2018 Agreement, Keane terminated his employment with Expeditors US and became an employee of Expeditors HK. (A045-46 ¶ 7.) From the time Keane relocated to Hong Kong in or around September 2018 until the end of his employment in December 2023, Expeditors HK paid Keane in accordance with, and subject to, Hong Kong taxes and legal requirements. (A046 ¶ 8.) The 2018 Agreement also contained a Hong Kong choice of law provision and a Hong Kong forum selection clause. (A045-46 ¶ 7, A055 § 24.)

Beginning in or around September 2018, Keane worked out of Expeditors HK's Hong Kong office and managed Expeditors HK's account with Lenovo, a

Chinese technology company.  (Complaint ¶¶ 44, 102-03, 141, 205.)  After Keane relocated to Hong Kong, Expeditors HK did not instruct him to perform any work in Massachusetts, and Expeditors HK did not ask Keane to travel to Massachusetts for work-related purposes.  (A046 ¶ 9.)  Keane contends that while he worked in Hong Kong, he arranged shipments from Hong Kong to Boston and that Expeditors HK had a revenue sharing agreement with Expeditors US for such shipments.  (A096 ¶ 11.)

In September 2023, Expeditors HK and Keane entered into a new employment agreement ("the 2023 Agreement"), in accordance with Expeditors HK's practice of renewing employment agreements of foreign nationals every five years. (Complaint ¶ 142; A046 ¶ 10, A058-64.)  The 2023 Agreement identified Expeditors HK as Keane's employer.  (A058.)  The 2023 Agreement also contained the same Hong Kong choice of law clause and Hong Kong forum selection clause as the 2018 Agreement.  (A064 § 24.)

### 2.    *Keane Allegedly Harasses a Female Colleague at a Hong Kong Hotel*

On or about September 21, 2023, Keane attended an Expeditors HK company dinner at the Brasserie restaurant in the Rosewood Hotel in Hong Kong.  (Complaint ¶ 119.)  B.L., a female Expeditors HK employee who worked in Hong Kong, also attended the dinner, among others. (Id. ¶ 153.)  That evening, B.L. reported to her Expeditors HK supervisors that Keane grabbed her arm and kissed her during the

dinner.  (Id.)  Expeditors HK investigated the incident and interviewed seven individuals, including Keane.  (Id. ¶¶ 152-63; A046 ¶¶ 11-13.)  None of these individuals lived or worked in Massachusetts at the time of the investigation.  (Id.)  Rather, they all lived and worked in Hong Kong or East Asia.  (Id.)

On November 3, 2023, Keane attended a disciplinary meeting with his supervisor, Kaiser Lam, the Regional Vice President for Expeditors HK.  (Complaint ¶¶ 180-99.)  Keane and Lam attended this meeting in-person, at Expeditors HK's Hong Kong office.  (Id. ¶ 181.)  The investigator, Hai Yiu Cheung, Senior Corporate Counsel, attended remotely from Singapore.  (Id. ¶ 180.)  During this meeting, Cheung told Keane that the investigation was complete and provided him another opportunity to explain his conduct.  (Id. ¶¶ 180-99.)  On December 11, 2023, Keane was informed of his termination during a meeting that occurred in Expeditors HK's Hong Kong office, with Lam and another Expeditors HK employee present.  (Id. ¶¶ 200-01.)

Keane claims that his termination was motivated, in whole or in part, by anti-American bias in Hong Kong and/or sex discrimination.  (Complaint ¶¶ 86-102, 293-298.)  Keane alleges that another example of this bias toward his sex and national origin occurred in September 2019—while he lived and worked in Hong Kong—when a female employee, E.H., accused Keane of submitting false expense reports, which he alleges is a "severe infraction" under Hong Kong law. (Complaint ¶¶ 58,

65.)  Keane alleges that Cheung also investigated these allegations and "displayed gender bias" during the investigation. (Complaint ¶¶ 70, 71.)  Keane also alleges that, during this time, E.H. "spread damaging rumors about him, including unfounded allegations regarding visits to the red-light district in Hong Kong." (Complaint ¶ 82.)

**B.    Procedural History**

On February 21, 2024, Keane filed a complaint in the United States District Court for the District of Massachusetts ("the District Court") alleging that Expeditors US and Expeditors HK (1) discriminated against him on the basis of gender (male) and national origin (American) in violation of Title VII; (2) interfered with prospective business relations by labeling Keane a "sex harasser" following the investigation into his conduct at the Hong Kong restaurant; and (3) subjected Keane to negligent infliction of emotional distress by falsely accusing him of sexual harassment, failing to conduct a fair investigation, and publicizing the false allegations without just cause.  (Complaint ¶¶ 293-298, 328-342.)  Keane also asserted separate breach of contract claims against Expeditors HK and Expeditors US.  (Id. ¶¶ 299-327.)  As to Expeditors US, Keane alleged (1) breach of an oral agreement because he claims that Expeditors US agreed that his transfer to Hong Kong would be temporary; and (2) breach of a written agreement because he claims that his employment was terminated in a manner inconsistent with his rights under

Hong Kong law.  (Id. ¶¶ 299-318.)  As to Expeditors HK, Keane alleged breach of contract by failing to pay him commissions owed under Hong Kong law and by terminating his employment in a manner inconsistent with his rights under Hong Kong law.  (Id. ¶¶ 319-327.)

On April 4, 2024, Defendants filed a motion to dismiss on the grounds that the District Court could not properly exercise personal jurisdiction over them in Massachusetts for Keane's claims, or, in the alternative, pursuant to the doctrine of *forum non conveniens*.  (Dist. Ct. Doc. Nos. 23, 24.)  On August 22, 2024, the District Court allowed Defendants' motion to dismiss.  (Dist. Ct. Doc. Nos. 57, 58; ADD 1.)

The District Court held that Keane failed to establish a prima facie case for the exercise of specific personal jurisdiction over Expeditors HK because it does not have the required minimum contacts with Massachusetts.  (ADD 9-12.)

The District Court further held that it could not properly exercise specific personal jurisdiction against Expeditors US over Keane's discrimination, interference, and negligent infliction claims because these claims arise out of and relate to events that occurred in Hong Kong, specifically, Keane's alleged harassment of an Expeditors HK employee at a Hong Kong restaurant, Expeditors HK's investigation into this reported harassment, the disciplinary hearing at

Expeditors HK's Hong Kong office, and the termination of Keane's employment in Hong Kong, allegedly in violation of his rights under Hong Kong law.  (ADD 13.)

Although the District Court held that it could exercise personal jurisdiction over Expeditors US for Keane's breach of contract claims in Counts II and III, the District Court dismissed the claims pursuant to *forum non conveniens*.  (ADD 16, 22.)  In Count II, Keane alleges that Expeditors US breached an oral agreement that his transfer to Hong Kong would be temporary.  (Complaint ¶¶ 299-301.)  Keane also alleges as part of Count II that Expeditors US breached the implied covenant of good faith and fair dealing because the December 2023 disciplinary hearings in Hong Kong were "tainted by unfairness and bias" and his employment was terminated "in an unlawful way under Hong Kong law[.]"  (Id. ¶¶ 305-06.)  In Count III, Keane alleges that Expeditors US breached the 2018 employment agreement by "summarily terminating" Keane in Hong Kong without just cause or due process, that the disciplinary proceedings were "conducted in a manner that was fundamentally unfair [and] biased …" and that his termination violated statutory protections under the Hong Kong Employment Ordinance.  (Id. ¶¶ 315-17.)

The District Court found that Hong Kong presented an adequate, available forum, that the question of whether Expeditors HK terminated Keane with or without cause under Hong Kong law is integral to his contract claims, and that the events leading up to his termination, as well as the termination itself, occurred in Hong

Kong. (ADD 20-21.) The District Court further held that resolution of these claims involved the interpretation and application of Hong Kong law, which a Hong Kong tribunal was "plainly better suited" to do. (ADD 22.) In sum, the District Court found that "Hong Kong has a greater interest in resolving what is, at its core, an employment dispute involving a Hong Kong employee and a Hong Kong company." (ADD 22.)

On September 3, 2024, Keane filed a motion to alter judgment. (Dist. Ct. Doc. No. 59.) On October 18, 2024, the District Court denied Keane's motion to alter judgment. (Dist. Ct. Doc. No. 65; ADD 025.) Keane then appealed to this Court. (Dist. Ct. Doc. No. 67.)

## IV.  **SUMMARY OF THE ARGUMENT**

The District Court did not err in finding that Expeditors HK lacks sufficient minimum contacts to justify the exercise of specific personal jurisdiction over Expeditors HK in Massachusetts for Keane's claims. Expeditors HK is a Hong Kong company that does not have any offices or employees in Massachusetts and does not transact business in Massachusetts. Moreover, Keane's claims against Expeditors HK arise out of Keane's employment in Hong Kong from 2018 until his termination in 2023 after the Company found that he sexually harassed another Hong Kong employee at a company event in a Hong Kong restaurant, not out of any alleged contacts between Expeditors HK and Massachusetts. Further, Keane waived the

agency/ratification argument he now pursues on appeal because he did not properly raise this argument before the District Court.

The District Court further did not err in finding that Expeditors US is not subject to specific personal jurisdiction in Massachusetts for Keane's non-contract claims of discrimination, intentional interference with prospective business relations, and negligent infliction of emotional distress. All of these claims relate to, and arise out of, events that allegedly occurred in Hong Kong while Keane lived and worked in Hong Kong as an employee of Expeditors HK.

The District Court did not abuse its discretion in dismissing Keane's two breach of contract claims against Expeditors US pursuant to the doctrine of *forum non conveniens*. Both of these contract claims relied in whole or in part upon Keane's allegations that his termination violated substantive rights provided to Hong Kong employees under Hong Kong law. Thus, the District Court did not fail to consider a material factor, substantially rely on an improper factor, or err in weighing proper factors when the District Court concluded that Hong Kong is the appropriate forum to resolve a dispute between a Hong Kong employee and a Hong Kong company.

The District Court did not abuse its discretion in denying Keane's motion to alter or amend the judgment of dismissal pursuant to Federal Rule of Civil Procedure

59(e). Keane's motion to amend did not present any new, previously unknown evidence or identify any manifest errors of law.

## V. <u>ARGUMENT</u>

### A.    <u>Standard of Review</u>

This Court reviews de novo a "district court's decision to dismiss for lack of personal jurisdiction when the court held no evidentiary hearing but instead conducted only a prima facie review of the jurisdictional facts." <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 57 (1st Cir. 2005) (citations omitted). "The burden of proving that personal jurisdiction may be exercised in the forum state lies squarely with the plaintiff." <u>Chen v. United States Sports Acad., Inc.</u>, 956 F.3d 45, 54 (1st Cir. 2020) (citing <u>Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.</u>, 825 F.3d 28, 34 (1st Cir. 2016)).

"The decision to grant or deny a motion to dismiss for *forum non conveniens* is generally committed to the district court's discretion." <u>Adelson v. Hananel</u>, 510 F.3d 43, 52 (1st Cir. 2007) (citing <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 257, (1981)). An abuse of discretion is only found if the district court "(1) failed to consider a material factor; (2) substantially relied on an improper factor; or (3) assessed the proper factors, but clearly erred in weighing them." <u>Adelson</u>, 510 F.3d at 52 (citing <u>Iragorri v. Int'l Elevator, Inc.</u>, 203 F.3d 8, 12 (1st Cir.2000)). In review under the abuse of discretion, this Court must "neither substitute its judgment for

that of the district court nor strike the balance of relevant factors anew." Iragorri, 203 F.3d at 12.

Finally, this Court reviews for an abuse of discretion a district court's refusal to alter or amend a judgment under either Rule 59(e) or its inherent authority. Markel Am. Ins. Co. v. Diaz-Santiago, 674 F.3d 21, 32 (1st Cir. 2012).

## B. The District Court Properly Held That It Could Not Exercise Specific Personal Jurisdiction Over Expeditors HK

The Massachusetts long arm statute, G.L. c. 223A, § 3, imposes limits on the exercise of personal jurisdiction that are more restrictive than those required by the United States Constitution. SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 328-29 (2017); see also A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 59 (1st Cir. 2016) (citing collected cases). Because the Massachusetts long arm statute imposes specific restrictions that are not co-extensive with the parameters of due process, a court must first determine whether the long arm statute authorizes the exercise of personal jurisdiction, before the constitutional analysis. See SCVNGER, 478 Mass. at 325. Here, the District Court properly held that the long arm statute did not permit the exercise of personal jurisdiction over Expeditors HK. See id. at 328-30. To find jurisdiction pursuant to § 3(a), there must be sufficient facts to establish that (1) Expeditors HK transacted business in Massachusetts and (2) Keane's claims arise from Expeditors HK's transaction of such business. See K.O. v. Sessions, 436 F. Supp. 3d 442, 448 (D. Mass. 2020); G.L. c. 223A, §3.

As the District Court found, the record establishes that Expeditors HK does not contract to supply services or things in Massachusetts, does not regularly solicit business or engage in a persistent course of conduct in Massachusetts, does not have an interest in using or possessing real property in Massachusetts, does not maintain an office in Massachusetts and does not have any employees in Massachusetts. (ADD 10; A046.)  Further, Expeditors HK is not incorporated in Massachusetts nor registered to do business in Massachusetts.  (A047.)  Rather, Expeditors HK is a Hong Kong company that is registered to do business in Hong Kong, with a principal office in Hong Kong.  (ADD 9-10; A046.)

On appeal, Keane no longer contends that the long arm statute permits the exercise of specific personal jurisdiction over Expeditors HK because he arranged "some sales and deliveries to customers in Massachusetts" while he worked in Hong Kong and because Expeditors HK had a "revenue sharing agreement" with Expeditors US for shipments from Hong Kong to Massachusetts, an argument the District Court properly rejected because those contacts have nothing to do with the events in Hong Kong leading to Keane's termination.  (ADD 10-12.)  Rather, Keane now argues that Expeditors US acted as Expeditors HK's agent when Expeditors US allegedly pressured Keane to relocate to Hong Kong and that Expeditors HK then ratified this alleged conduct.  (Keane Br. at p. 20.)  This argument fails for several reasons.

Keane did not make this agency and ratification argument to the District Court, and he cannot raise this argument for the first time on appeal. See States Res. Corp. v. The Architectural Team, Inc., 433 F.3d 73, 85 (1st Cir. 2005); Watkins v. Ponte, 987 F.2d 27, 31 (1st Cir. 1993). "This Circuit religiously follows the rule that issues not presented to the district court cannot be raised on appeal." Ouimette v. Moran, 942 F.2d 1, 12 (1st Cir. 1991); States Res. Corp., 433 F.3d at 85; Watkins, 987 F.2d at 31. Even the mere mention of an issue in a pleading is "insufficient to carry a party's burden actually to present a claim or defense to the district court before arguing the matter on appeal." States Res. Corp., 433 F.3d at 85; Violette v. Smith & Nephew Dyonics, 62 F.3d 8, 11 (1st Cir. 1995). Here, Keane argued before the District Court that Expeditors HK was subject to personal jurisdiction in Massachusetts because Expeditors HK, as a subsidiary, functioned as the corporate "alter ego" of Expeditors US. (Complaint ¶¶ 17-20.) The parties fully briefed the "alter ego" issue, with affidavits setting forth facts relevant to the corporate "alter ego" analysis and citations to cases addressing the "alter ego" standard. (Defs.' Mem. Law Supp. Mot. Dismiss pp. 19-20, Dist. Ct. Doc. No. 24; Aff. Kaiser Lam, Dist. Ct. Doc. No. 25; Aff. Jeffrey Dickerman, Dist. Ct. Doc. No. 26; Pl.'s Opp. Mot. Dismiss pp. 17-18, Dist. Ct. Doc. No. 29; Defs.' Reply pp. 15-16, Dist. Ct. Doc. No. 37.) The District Court then properly concluded that Expeditors HK was not the corporate alter ego of Expeditors US because the undisputed evidence established

that, among other factors, Expeditors HK "maintains its own ledgers and accounting books; prepares its own business plans, payroll, budget and financial statements … and controls the decisions regarding hiring and firing of its employees." (ADD 16-17.)

Now, dissatisfied with this outcome, Keane abandons the corporate alter ego argument and instead raises issues of actual or apparent authority and ratification under the Restatement (Second) of Agency. (Keane Br. at p. 20.) However, Keane may not "switch theories" on appeal in an attempt to salvage his claims. See Curran v. Cousins, 509 F.3d 36, 47, n.6 (1st Cir. 2007). Keane's failure to raise the traditional agency/ratification argument before the District Court is particularly prejudicial because the alter ego theory invokes different factual and legal issues than the traditional agency and ratification analysis. Compare Bridge Street Auto., Inc. v. Green Valley Oil, LLC, 985 F. Supp. 2d 96, 112-14 (D. Mass. 2013) (applying corporate alter ego/veil piercing analysis) with Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55-56 (1st Cir. 2002) (applying Restatement agency and ratification analysis). In fact, while proceeding before the District Court, Keane never even cited—let alone sufficiently briefed—the precedent he now relies upon for his newfound agency argument, Daynard, 290 F.3d 42 (1st Cir. 2002) and Inn Foods, Inc. v. Equitable Coop. Bank, 45 F.3d 594 (1st Cir. 1995). As such,

Keane cannot raise these arguments for the first time on appeal.  See States Res.

Corp., 433 F.3d at 85; Watkins, 987 F.2d at 31; Ouimette, 942 F.2d at 12.

Further, Keane's impermissible switcheroo is substantively unavailing

because the precedent he relies upon does not remotely support the existence of

agent-principal relationship between Expeditors US and Expeditors HK.  See

Daynard, 290 F.3d at 55-56.  In Daynard, the plaintiff, a law professor at

Northeastern University, alleged that he was retained by two law firms operating as

a joint venture in tobacco litigation, that he provided advice to members of both

firms by phone and in-person in Boston, and that both firms represented to him and

the public at large that they were partners in a joint venture in various tobacco

lawsuits across the country.  290 F.3d at 58.  Here, by contrast, Keane does not allege

any direct communications with Expeditors HK in Boston with regard to his transfer

and does not allege facts showing that Expeditors US acted at the direction or control

of Expeditors HK for purposes of Keane's transfer.  See Daynard, 290 F.3d at 55-

56.  Further, there are no facts suggesting that Expeditors US and Expeditors HK

held themselves out as engaged in a joint venture or partnership regarding Keane or

any other person or entity. As such, this Court should affirm the District Court's

holding that the Massachusetts long arm statute does not permit the exercise of jurisdiction over Expeditors HK.[2]  See id.

## C.    The District Court Properly Declined to Exercise Specific Personal Jurisdiction Over Keane's Non-Contract Claims

As the District Court properly found, the exercise of personal jurisdiction over Expeditors US for Keane's non-contract claims is not permissible under the long arm statute or the Due Process Clause because Keane's claims of discrimination, intentional interference, and negligent infliction arise out of events that allegedly occurred in Hong Kong, not out of Expeditors US's contacts with Massachusetts. See Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999).   Moreover, as set forth below, there is no basis to exercise personal jurisdiction over either Defendant for Keane's non-contract claims, even if this Court were to reverse the District Court's holding that the long arm statute does not provide grounds for the exercise of specific personal jurisdiction over Expeditors HK.  See id.

---

[2] In his brief, Keane asserts that the District Court "failed to consider and give proper weight to evidence establishing Expeditors HK's purposeful availment of Massachusetts."  (Keane Br. at p. 18).  However, the District Court did not specifically reach the issue of purposeful availment for Expeditors HK and instead found that, as to Expeditors HK, Keane had not satisfied his burden of proving the minimum contacts required by the long arm statute or relatedness.  (ADD 10-12.)

The Due Process analysis is a tripartite analysis that requires a court to find (1) relatedness, meaning the litigation directly relates to or arises out of the defendant's contacts with the forum; (2) purposeful availment of the benefits and protections afforded by the forum's laws; and (3) the overall reasonableness of an exercise of jurisdiction.  See id. at 288.  "Questions of specific jurisdiction are always tied to the particular claims asserted," and contract and tort claims are analyzed separately.  See id. at 289.

**1.    *Keane's Non-Contract Claims Do Not Relate to Expeditors US's Contacts in Massachusetts***

To satisfy the relatedness prong of the constitutional inquiry in a tort case, "the evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts."  See Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 137 (1st Cir. 2006) (citations omitted).  A broad "but-for" argument is generally insufficient because "due process demands something like a 'proximate cause' nexus."  Id.  Here, Keane's Title VII claims arise out of his allegations that (1) while he worked for Expeditors HK in Hong Kong, he was subjected to anti-American sentiment in Hong Kong and (2) Expeditors HK failed to properly investigate the allegation that he sexually harassed a Hong Kong co-worker at a Hong Kong hotel before deciding to terminate his employment in Hong Kong.  (Complaint ¶¶ 86-102, 293-298; ADD 13.)  Similarly, Keane's interference with prospective business relations claim arises

out of his allegation that Defendants interfered with Keane's business relationship with Lenovo by labeling Keane as a "sex harasser" as a result of his conduct in Hong Kong and by not conducting a proper investigation into the allegations of misconduct in Hong Kong.  (Complaint ¶¶ 328-336; ADD 13.)  Keane's negligent infliction claim arises out of his allegation that Defendants caused him emotional distress by "falsely accusing the Plaintiff of sexual harassment, failing to conduct a fair investigation, unlawfully summarily dismissing him and publicizing the false allegations without just cause …"   (Complaint ¶¶ 337-342; ADD 13.)   As the District Court found, these claims arise out of events that allegedly occurred in Hong Kong during the time Keane lived and worked for Expeditors HK in Hong Kong, not out of Expeditors US's contacts in Massachusetts.  (ADD 13); see Platten, 437 F.3d at 137-38.

Specifically, the investigation of Keane's alleged harassment, his disciplinary hearing, and his termination all occurred in 2023 in Hong Kong, as did the 2019 complaint and investigation into Keane's alleged submission of false expense reports and visits to Hong Kong's red-light district. Keane's attempt to broadly connect all of these alleged events to his transfer to Hong Kong is the broad, speculative argument that is insufficient under the Due Process analysis.  See Platten, 437 F.3d at 137-38.   As such, the District Court properly declined to exercise personal

jurisdiction over Expeditors US in Massachusetts for these claims. See id.; Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995).

For these same reasons, even if this Court finds that the District Court could exercise specific personal jurisdiction over Expeditors HK pursuant to the long arm statute, there is no basis to find that Keane's non-contract claims are related to Expeditors HK's alleged revenue sharing with Expeditors US for shipments to Massachusetts. See Platten, 437 F.3d at 137-38; Sawtelle, 70 F.3d at 1389-90. Therefore, this Court should affirm the District Court's dismissal of Keane's non-contract claims for lack of specific personal jurisdiction. See Platten, 437 F.3d at 137-38; Sawtelle, 70 F.3d at 1389-90.

### 2. *Defendants Did Not Purposefully Avail Themselves of Massachusetts Law*

Dismissal of Keane's non-contract claims against both Defendants is appropriate because neither entity purposefully availed itself of the protections of the laws of Massachusetts in relation to Keane's claims. See BCCTC Assocs., Inc. v. Summerdale/AAHFI, L.P., 656 F. Supp. 2d 208, 217-18 (D. Mass. 2009). The "two cornerstones of purposeful availment are voluntariness and foreseeability." Chen, 956 F. 3d at 59 (internal quotations and citation omitted). "Achieving voluntariness demands that the defendant's contacts with the forum result proximately from its own actions." Id. (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008)). To clear the foreseeability hurdle, "the defendant's conduct

and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." <u>Chen</u>, 956 F. 3d at 59 (citations omitted).

As an initial matter, it is far from clear that Keane has adequately briefed the issue of purposeful availment by either Defendant on appeal. (Keane Br. at pp. 22-23; 29-30.)  As to Expeditors HK, Keane only cites to one case, first for a parenthetical assertion of the general principle that the purposeful availment analysis focuses on voluntariness and foreseeability and then for a parenthetical assertion that a defendant's contacts must not be based on unilateral action. (Keane Br. at pp. 22-23.)  The remainder of Keane's argument lacks any legal or factual citations and offers broad, unfounded assertions that Expeditors HK had "a clear intent to engage in substantial business dealings within" Massachusetts.   (Keane Br. at p. 23.) Keane's arguments as to Expeditors US are even more sparse because he collapses his purposeful availment and reasonableness arguments into four total sentences, without any factual or legal citations whatsoever. (Keane Br. at pp. 29-30.)  As such, Keane has not met his obligation to adequately brief the issue on appeal. <u>See</u> <u>Cortes-Rivera v. Dep't of Corr. & Rehab. of Comm. of Puerto Rico</u>, 626 F.3d 21, 27 (1st Cir. 2010); <u>United States v. Bongiorno</u>, 106 F.3d 1027, 1034 (1st Cir. 1997) ("We have steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation.") (citing cases).  However, in the event this Court reaches the question of purposeful availment, this Court should affirm the

District Court's decision not to exercise specific personal jurisdiction over Keane's non-contract claims on the alternative grounds that Defendants did not purposefully avail themselves of Massachusetts law.  See BCCTC Assocs., 656 F. Supp. 2d at 217-18.

Keane seemingly argues that Defendants purposefully availed themselves of Massachusetts law by communicating with Keane for purposes of transferring him to Hong Kong, the same facts Keane argues are sufficient for Defendants to have transacted business under the long arm statute.  (Keane Br. at pp. 22-23.)  However, it is black-letter law that a defendant must do more than "transact business" under the long arm statute for a defendant to purposefully avail itself of the protections of the laws of the forum state.  See BCCTC Assocs., 656 F. Supp. 2d at 217 (citing Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 933-35 (1st Cir. 1985)).  In BCCTC Associates, the defendant's contacts with Massachusetts consisted of communicating with the plaintiff in Massachusetts to create a contract and submitting reports to a Massachusetts company pursuant to the contract.  656 F. Supp. 2d at 218.  The court held that it could not exercise specific personal jurisdiction over the defendants, even though the defendant's conduct constituted "transacting business" under the long arm statute, because this conduct was "simply insufficient to satisfy the purposeful availment requirement."  Id.  Here, similarly, Keane alleges only that while he still lived in Massachusetts, Expeditors US

communicated with him regarding his transfer to Hong Kong, allegations that are insufficient, as a matter of law, to establish that Expeditors HK or Expeditors US purposefully availed themselves of the protections of Massachusetts law for the purposes of Keane's relocation to, and subsequent continued employment in, Hong Kong.  See id.; see also Sawtelle, 70 F.3d at 1392 (no purposeful availment when "the [defendants'] only connection with [the forum state] was the [plaintiffs'] residence there").  Further, in BCCTC Associates, the court noted that when the contract at issue calls for application of the law of another forum, the finding that defendant did not purposefully avail itself of the forum's jurisdiction is strengthened.  See 656 F. Supp. 2d at 217-18.  Here, both the 2018 Agreement and the 2023 Agreement explicitly call for the application of Hong Kong law, further reinforcing the conclusion that Defendants did not purposefully avail themselves of Massachusetts law regarding Keane's employment in Hong Kong.  See id. (A055, A064.)

As this Court has held, "[i]t stretches too far" to say that a defendant can reasonably expect it is "rendering itself liable to suit in Massachusetts" when the defendant's contacts consist of negotiating an employment contract with a Massachusetts resident who then signs the contract in Massachusetts.  See Phillips, 530 F.3d at 29.  In Phillips, this Court held that the defendant did not purposefully avail itself of Massachusetts law when the defendant negotiated with a

Massachusetts resident about the terms of a contract that called the plaintiff to be employed in Illinois, not in Massachusetts. See id. Put simply, a defendant does not avail itself of any protections of Massachusetts law when, as in this matter, the defendant merely enters into an employment contract for an employee to relocate to Hong Kong and the employee then works continuously in Hong Kong until his termination for events that allegedly occurred in Hong Kong. See id. As such, Defendants did not purposefully avail themselves of Massachusetts law for Keane's non-contract claims of discrimination, interference or negligent infliction. See id. at 28-29.

### 3. *The Exercise of Personal Jurisdiction Over Defendants Is Not Reasonable*

The District Court's dismissal also should be affirmed because the exercise of specific personal jurisdiction over either entity for Keane's non-contract claims is not reasonable on these facts. See Harlow, 432 F.3d at 67. This Court has identified the following "Gestalt factors" to guide the reasonableness inquiry: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Id. The reasonableness prong of the Due Process inquiry "evokes a sliding scale." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir.

1994).  In other words, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Id.; Harlow, 432 F.3d at 67. As set forth above, Keane's showings of relatedness and purposeful availment are weak, thus, Defendants' burden to establish unreasonableness is light. See id.  Additionally, any deference typically afforded a plaintiff's choice of forum is further weakened when, as in this matter, the "operative events" for Keane's non-contract claims did not occur in Massachusetts, the forum state.  See Fed. Ins. Co. v. XTRA Intermodal, Inc., No. 14-cv-14010-ADB, 2015 WL 4275181, at *4 (D. Mass. July 15, 2015).

Here, every factor shows that it would be unreasonable for a Massachusetts court to exercise specific jurisdiction over Defendants for Keane's claims.  See Harlow, 432 F.3d at 66-69; Ticketmaster-New York, Inc., 26 F.3d at 209-12. Expeditors HK's burden of appearing is substantial because it does not maintain an office in Massachusetts and does not have any employees in Massachusetts.  (A047 ¶¶ 16-17.)  Further, Massachusetts has little, if any, interest in adjudicating this dispute, which arises out of allegations that Expeditors HK, a Hong Kong company, failed to properly investigate a report that Keane, a Hong Kong resident who worked in Hong Kong, sexually harassed B.L., another Hong Kong employee, during an event at a Hong Kong restaurant.  See Bowen v. eLanes New Hampshire Holdings, LLC, 166 F. Supp. 3d 104, 109 (D. Mass. 2015) (Massachusetts jury will have "little

to no interest" in adjudicating a dispute involving New Hampshire entity where alleged conduct occurred in New Hampshire).  As such, the first and second factors weigh in favor of not exercising specific personal jurisdiction over Keane's non-contract claims.  See id. The third factor—Keane's interest in obtaining convenient and effective relief—is neutral, given that both Hong Kong law and American law provide the relief Keane seeks.

Additionally, the fourth factor—the judicial system's interest in obtaining the most effective resolution of the controversy—further establishes the unreasonableness of exercising specific personal jurisdiction over Defendants.  See Harlow, 432 F.3d at 67-68.  The Hong Kong judicial system is far more well-equipped to provide effective, complete resolution of Keane's claims, given that many of his claims arise under Hong Kong law and/or require the interpretation and application of Hong Kong statutes and case law.  See Dow Jones & Co. v. Juwai Ltd., No. 21-7284, 2023 WL 2561588, at *11 (S.D.N.Y. March 17, 2023).

The fifth factor—consideration of the common interests of all sovereigns in promoting substantive social policies—also weighs heavily in favor of Hong Kong because Hong Kong has a significant interest in enforcing its own anti-discrimination statutes and other laws enacted to protect employees who live and work in Hong Kong.  See Equal Opportunities Comm'n v. Dir. of Ed. [2001], 2 HKLRD 690 [1]-[3] (C.F.I.).  In July 1995, Hong Kong enacted the Sex

Discrimination Ordinance, Chapter 480 for the important public purpose of allowing individuals "to function openly as members of our society on an equal footing with all other members." See id. at 1. Hong Kong has similarly enacted a Race Discrimination Ordinance, Chapter 602. Plainly, Hong Kong's interest in protecting individuals living and working in Hong Kong and providing redress for alleged violations of these laws is a concern of paramount importance to Hong Kong. See id.; see also PFIP, LLC v. Planet Fitness Enters., Inc., No. 04-250-JD, 2004 WL 2538489, at *8 (D.N.H. Nov. 10, 2004) (exercise of specific jurisdiction in New Hampshire over non-resident defendant unreasonable even though plaintiff was a New Hampshire business because "nearly all of the challenged activities occurred in Florida rather than New Hampshire").

Because (1) Massachusetts presents a substantial burden of appearing for Expeditors HK, (2) Massachusetts has no interest in adjudicating this dispute; (3) Hong Kong has a substantial interest in resolving the controversy and promoting its own substantive social policies, and (4) Hong Kong presents the most effective forum for resolution of Keane's claims, the exercise of personal jurisdiction over Defendants in this matter is unreasonable. See Harlow, 432 F.3d at 67; Ticketmaster–New York, 26 F.3d at 209-10; Bowen, 166 F. Supp. 3d at 109.

**D.     The District Court Did Not Abuse Its Discretion in Dismissing Keane's Contract Claims Against Expeditors US Pursuant to *Forum Non Conveniens***

The doctrine of *forum non conveniens* permits a court to dismiss a case because the chosen forum, despite the presence of jurisdiction and venue, is so inconvenient that it would be unfair to conduct litigation in that place.  See Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 950, 953 (1st Cir. 1991).  To do so, the party seeking dismissal must show that an adequate alternative forum exists and that certain public and private interest factors weigh in favor of dismissal.  Id. at 950-51.  Here, the District Court did not abuse its discretion in dismissing Keane's contract claims against Expeditors US pursuant to the doctrine of *forum non conveniens*.  See id.

**1.     *Hong Kong is an Adequate Available Forum***

A defendant seeking dismissal due to *forum non conveniens* must first demonstrate that the alternative forum is available.  Snöfrost AB v.  Håkansson, 353 F. Supp. 3d 99, 103-04 (D. Mass. 2018).  To establish that Hong Kong is an available forum, Expeditors US must show that (1) Hong Kong has personal jurisdiction over the defendant; (2) Hong Kong permits litigation of the subject matter of the dispute; and (3) Hong Kong is an adequate alternative forum.  Id. at 104, 107.  Here, the District Court did not abuse its discretion in concluding that all three factors are met.  See id.  The District Court interpreted the 2018 Agreement to provide the basis for

a Hong Kong tribunal to exercise jurisdiction over Expeditors US for Keane's claims, a finding that Keane does not challenge on appeal. (ADD 18-19.) In fact, even if a Hong Kong tribunal declined to exercise jurisdiction over Expeditors US, dismissal pursuant to *forum non conveniens* is still appropriate because Keane could pursue his claims against the other named defendant, Expeditors HK. See Imamura v. Gen. Elec. Co., 371 F. Supp. 3d 1, 8-9 (D. Mass. 2019) (*forum non conveniens* does not require foreign forum to permit remedy against "the specific defendant sued in the American litigation where the forum provides an adequate remedy from another party or entity."). Additionally, the record establishes—and Keane does not challenge—that Hong Kong permits litigation of the types of claims brought by Keane and has tribunals established for purpose of adjudicating employment disputes. See Tadjudin v. Bank of Am. Nat'l Assoc. [2008], HKCU 1842 [16]-[17] (C.F.I.); Sex Discrimination Ordinance, Cap. 480(76)(3A)(a)-(g) (H.K.); Race Discrimination Ordinance Cap. 602(70)(4)(a)-(g) (H.K.).

On appeal, Keane abandons his arguments before the District Court that Hong Kong is not an adequate forum because of differences between Hong Kong law and United States law governing discovery and contingency fee agreements, which the District Court properly rejected. (ADD 19); see Piper Aircraft Co., 454 U.S. at 252 n.18 (1981); Howe, 946 F.2d at 952. Rather, Keane now argues that Hong Kong is not an adequate forum because some of his claims may be barred by Hong Kong's

nine-month statute of limitations. (Keane Br. at pp. 17-18.) Keane once again failed to timely raise this argument before the District Court, and this argument is therefore waived.[3] See States Res. Corp., 433 F.3d at 85; Watkins, 987 F.2d at 31; Ouimette, 942 F.2d at 12. Thus, because Keane did not timely raise the statute of limitations argument in the District Court, he cannot pursue this argument on appeal. See id.

Additionally, as with Keane's other untimely arguments, his statute of limitations argument fails as a substantive matter. See Beijing Abace Biology Co., Ltd. v. Zhang, 122 F.4th 448, 452-53 (1st Cir. 2024). The entirety of Keane's argument on this issue consists of citation to a Hong Kong Employment Ordinance. (Keane Br. at pp. 17-18.) However, it is well-established that the "dimensions of foreign law must be determined by the inquiring court" by conducting its own research and analysis, guided by statutes, decrees, administrative orders, local rules, certified translations of reported cases and judicial interpretations, often assisted by opinions from witnesses who are experts in the law of the foreign jurisdiction. See Beijing Abace Biology Co., Ltd., 122 F.4th at 453. Keane has not proffered any other evidence to establish the scope or applicability of the statute of limitations to any of his specific claims and has not addressed whether, or to what extent, Hong

---

[3] As discussed below, Keane did not raise any alleged statute of limitations issue until his Rule 59(e) motion to alter or amend the judgment, and he therefore failed to timely raise this argument. See Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 537 (1st Cir. 2011).

Kong recognizes any equitable or other exceptions to this statute of limitations.  See

id. Thus, even if he had timely raised this argument before the District Court, his

cursory and conclusory citation to a single ordinance, without anything more, does

not establish that the Hong Kong statute of limitations operates to bar any of his

claims.  See id.; see also Harlow 432 F.3d at 67-68 (noting that in personal

jurisdiction context, plaintiff's failure to timely file in other jurisdiction did not

render other jurisdiction "unavailable" and doing so would encourage forum

manipulation by plaintiffs).

For these reasons, the District Court did not fail to consider a material factor,

rely upon an improper factor, or clearly err in weighing a proper factor in finding

that Hong Kong is an adequate available forum.  See, e.g., Easy Spirit LLC v. DBS

Bank LTD, No. 19-8290, 2019 WL 13133363, at *4 (C.D. Cal. Dec. 10, 2019) (Hong

Kong adequate alternative forum for contract and tort disputes) (listing cases); see

also Cook v. Champion Shipping AS, 463 F. Appx. 626, at *1 (9th Cir. 2011); Ford

v. Brown, 319 F.3d 1302, 1310 (11th Cir. 2003); Turan v. Universal Plan Inv. Ltd.,

70 F. Supp. 2d 671, 677 (E.D. La. 1999); Capri Trading Corp. v. Bank Bumiputra

Malaysia Berhad, 812 F. Supp. 1041, 1043-44 (N.D. Cal. 1993).

### 2. *The District Court Did Not Abuse Its Discretion In Finding that the Private Factors Weigh in Favor of Dismissal Pursuant to Forum Non Conveniens*

The private factors considered by a court in determining whether to dismiss

claims on the grounds of *forum non conveniens* include: (1) ease of access to sources

of proof; (2) availability of compulsory process for unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) "[a]ll other practical problems that make trial of case easy, expeditious and inexpensive." Snöfrost, 353 F. Supp. 3d at 107 (citation omitted). Here, the District Court did not fail to consider a material factor, substantially rely on an improper factor, or clearly err in weighing the factors in determining that the locus of injury is Hong Kong, and the private factors therefore weigh in favor of dismissal. See id. at 107-09. On appeal, Keane attempts to distract from the District Court's finding that the core of his dispute arises out of events that allegedly occurred in Hong Kong. Specifically, Keane argues that because his termination letter referenced a prior allegation of sexual harassment in 2014, while he worked for Expeditors US in Massachusetts, this 2014 allegation is the actual crux of his complaint, not the events that transpired in Hong Kong in 2023. This argument is completely at odds with the allegations in Keane's Complaint, and the District Court did not abuse its discretion in disregarding this specious argument, given the overwhelming connection between Keane's factual allegations and claims invoking protections of Hong Kong law. See Snöfrost, 353 F. Supp. 3d at 109-110.

Keane also contends on appeal that the District Court erred in concluding that he asserted "without support" that witnesses are located "around the world" and that the District Court "overlook[ed] the substantial and detailed information that Keane provided" in an affidavit. (Keane Br. at pp. 16-17.) However, Keane's affidavit

merely listed numerous individuals, many of whom had no apparent, let alone credible, relevance to the events in Hong Kong that led to Keane's termination. (A073-74 ¶ 16.)  Although Keane may disagree with the weight and credibility the District Court afforded his characterization of these allegedly relevant witnesses in California, Arkansas, Massachusetts, and other states—a characterization that strains credulity—the District Court did not fail to consider a material factor, rely on an improper factor, or clearly err in weighing these factors.  See Howe, 946 F.2d at 950-53.  Rather, the District Court afforded this argument what little weight it deserves, and Keane improperly seeks to have this Court substitute its judgment for that of the District Court in determining that Keane did not support his argument. See id.

Additionally, to the extent Keane contests the sufficiency of Expeditors HK's affidavit regarding the location of relevant witnesses, there is no blanket rule that a defendant must identify the substance of a proposed witness's testimony or the identity of the witness.  See Curtis v. Galakatos, 19 F.4th 41, 51 (1st Cir. 2021). Here, the crucial witnesses—including B.L., the person who accused Keane of sexual assault, Cheung, the person who investigated the report, and Lam, Keane's supervisor who attended the disciplinary hearing and termination meeting—were already identified by name in Keane's Complaint and all live in or relatively near Hong Kong.  (Complaint ¶¶ 163, 180-82.)  Moreover, several of the individuals

Keane identified reside in Singapore and Mainland China, further underscoring Defendants' position that *relevant* witnesses are located in Hong Kong and East Asia. (A073-74 ¶ 16.) As such, the District Court did not abuse its discretion in finding that the location of relevant witnesses weighs in favor of dismissal, and Keane's attempt to muddy the waters by listing numerous individuals with no connection to the events in Hong Kong is not credible. See Howe, 946 F.2d at 950-53. Moreover, the location of relevant witnesses is but one of several private factors, and the District Court did not abuse its discretion in finding that the other private factors also support dismissal of Keane's contract claims against Expeditors US. See id. Specifically, any relevant documents or other sources of proof are in the possession of Expeditors HK, a Hong Kong entity. See id. at 950-51. As such, there is substantially easier access to sources of proof in Hong Kong than in Massachusetts. See id. Additionally, as the District Court found, the practical problems that would make trial of this case easy, expeditious and inexpensive weigh strongly in favor of Hong Kong. See id. at 951. There is substantial benefit to all litigants and to the legal systems in both jurisdictions to avoid inconsistent findings or rulings of law and to avoid the unnecessary expense of litigating parallel proceedings in both Hong Kong and Massachusetts. See id. Thus, the District Court did not abuse its discretion in concluding that the private factors weigh in favor of dismissal. See id.

3. ***The District Court Did Not Abuse Its Discretion In Finding that the Public Factors Weigh in Favor of Dismissal Pursuant to Forum Non Conveniens***

The District Court also did not abuse its discretion in finding that the public factors tip strongly in favor of Hong Kong as the appropriate forum because, at its core, Keane's dispute is "an employment dispute involving a Hong Kong employee and a Hong Kong company." (ADD 22.) The public factors a court must consider when analyzing dismissal pursuant to *forum non conveniens* include "[1] the administrative difficulties resulting from court congestion in the plaintiff's chosen forum; [2] the local interest in having localized controversies decided at home; [3] the interest in having the trial of a case conducted in a forum that is at home with the governing law; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of imposing jury duty on citizens in an unrelated forum." See Snöfrost, 353 F. Supp. 3d at 107 (internal quotations and citation omitted).

Here, the evidence presented to the District Court supported its conclusion that these factors weigh strongly in favor of Hong Kong as the more convenient forum. See id. First, Keane's claims arise under and are expressly governed by Hong Kong law, and there is a strong preference for a forum to apply laws with which it is familiar. See Dow Jones & Co., 2023 WL 2561588, at *11. Moreover, the fact that the parties twice agreed to a forum selection clause with Hong Kong as

the designated forum is another factor weighing in favor of Hong Kong as the appropriate forum. See Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1355 (1st Cir. 1992).

The record further established that proceeding in Keane's chosen forum would unnecessarily burden the District Court's already congested court system. (Defs.' Mem. Supp. Mot. Dismiss p. 17, Dist. Ct. Doc. No. 24.) According to the Federal Court Management Statistics published in December 2023,[4] the average time period from filing to trial in civil matters in the District of Massachusetts was 34.6 months, and more than 10% of civil cases were more than three years old, which ranked in the bottom half of district courts nationwide. (Id.) Moreover, there were 4,203 new filings in the district in 2023, a 27.4% increase over 2022. (Id.)

Additionally, it is manifestly unfair to impose jury duty upon residents of Massachusetts to decide a dispute between Expeditors HK, a Hong Kong Company, and Keane, a former Expeditors HK employee who was terminated for misconduct that occurred in Hong Kong and who claims his rights under Hong Kong law were violated. See Snöfrost, 353 F. Supp. 3d at 107-08. Keane did not provide the District Court any credible explanation for why Massachusetts would have an interest in

---

[4] https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2023 (last visited January 20, 2025). This December 2023 report contained the most recent annual data at the time Defendants filed their motion in the District Court in April 2024.

claims related to Keane's employment and residency in Hong Kong, merely because Keane moved back to Massachusetts *after* the events that transpired in Hong Kong—events that are the heart of Keane's claims—and he again fails to do so in this Court. See Howe, 946 F.2d at 950-53; Snöfrost, 353 F. Supp. 3d at 107-08.

When, as in this matter, all of the public and private factors strongly favor the foreign forum or are, at most, neutral, these factors overcome the presumption afforded a plaintiff in their choice of forum.   See Howe, 946 F.2d at 950-53; Snöfrost, 353 F. Supp. 3d at 107-08.  As such, the District Court did not abuse its discretion in dismissing Keane's contract claims against Expeditors US pursuant to the doctrine of *forum non conveniens*.  See Howe, 946 F.2d at 950-53.

## E.   The District Court Did Not Abuse Its Discretion in Denying Keane's Motion to Alter or Amend the Judgment

Although Keane also purports to appeal the District Court's order denying his motion to alter or amend the judgment dismissing his Complaint, he does not appear to address this ruling at any point in his appellate brief.  Regardless, in the event this Court reaches the issue, this Court should affirm the District Court's denial of Keane's Rule 59 motion.  See Feliciano-Hernandez, 663 F.3d at 537.

Rule 59 motions are "extraordinary remedies which should be used sparingly" and are "typically denied."  U.S. ex rel. Gagne v. City of Worcester, 564 F. Supp. 2d 81, 83 (D. Mass. 2008) (citing Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 1129, 123 (1st Cir. 1990)); Trabal

Hernandez v. Sealand Servs., Inc., 230 F. Supp. 2d 258, 259 (D.P.R. 2002); 11

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and*

*Procedure* § 2810.1, at 128 (2d ed. 1995)).  This is particularly true when the moving

party does nothing but "repeat old arguments previously considered and rejected,"

as Keane did in his motion.  See Gagne, 564 F. Supp. 2d at 83.  A Rule 59 motion

further "should not 'raise arguments which could, and should, have been made

before judgment issued,'" as Keane did with his statute of limitations argument.  See

Feliciano-Hernandez, 663 F.3d at 537 (citations omitted).  Rather, to obtain relief,

the movant must demonstrate either that newly discovered evidence (not previously

available) has come to light or that the rendering court committed a manifest error

of law.  Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006).  Here, Keane

did not—and does not—identify any newly discovered evidence or manifest error of

law that warrants relief pursuant to Rule 59(e).  Instead, Keane merely asserted that

the District Court "overlooked" his allegations regarding the contract negotiations

leading up to his transfer or that he disagreed with the District Court's conclusion

that his claims have a "center of gravity" in Hong Kong.  As such, the District Court

did not abuse its discretion in denying Keane's Rule 59(e) motion.  See Rosario-

Mendez v. Hewlett Packard Caribe, 660 F. Supp. 2d 229, 234 (D.P.R. 2009)

(denying Rule 59 motion where plaintiff "simply disagrees with the decision" and

"pretends to relitigate and/or rehash a matter which was already litigated and decided by this court.").

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, the District Court's judgment should be affirmed.


Dated:        February 10, 2025          Respectfully submitted,

EXPEDITORS INTERNATIONAL OF WASHINGTON, INC. AND EXPEDITORS HONG KONG LIMITED,

By their attorneys,

/s/ Asha A. Santos
Asha A. Santos, First Cir. No. 1143614
asantos@littler.com
Matthew J. Lynch, First Cir. No. 1165531
mlynch@littler.com

LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Telephone: 617.378.6000
Facsimile:  617.737.0052

## RULE 32(G) CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 9,277 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

/s/ Asha A. Santos
Asha A. Santos
First Cir. No. 1143614

## CERTIFICATE OF SERVICE

I, Asha A. Santos, hereby certify that on this 10th day of February 2025, I electronically filed the foregoing brief of Defendants-Appellees with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following counsel of record for Plaintiff-Appellant is registered as an ECF Filer and will be served by the CM/ECF system:

Jeremia A. Pollard
Hannon Lerner PC
184 Main St
Lee, MA 01238-0000
Email: jpollard.hannonlerner@gmail.com

Dated: February 10, 2025

Respectfully submitted,

EXPEDITORS INTERNATIONAL OF WASHINGTON, INC. AND EXPEDITORS HONG KONG LIMITED,

By their attorneys,

/s/ Asha A. Santos

Asha A. Santos, First Cir. No. 1143614
asantos@littler.com
Matthew J. Lynch, First Cir. No. 1165531
mlynch@littler.com

LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA 02110
Telephone: 617.378.6000
Facsimile: 617.737.0052

# ADDENDUM

Memorandum and Order dated August 22, 2024 (Dist. Ct. Doc. No. 57)....... ADD 1

Order of Dismissal dated August 22, 2024 (Dist. Ct. Doc. No. 58) .............. ADD 24

Order Denying Plaintiff's Motion to Alter/Amend (Dist. Ct. Doc. No. 65) .. ADD 25

Sex Discrimination Ordinance, Cap. 480(76)(3A)(a)-(g) (H.K.) ................. ADD 26

Race Discrimination Ordinance Cap. 602(70)(4)(a)-(g) (H.K.). ................... ADD 30

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
DAVID KEANE,                            )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )        Civil Action
                                        )        No. 24-10399-PBS
EXPEDITORS INTERNATIONAL OF             )
WASHINGTON, INC., and EXPEDITORS        )
HONG KONG, LIMITED,                     )
                                        )
                    Defendants.         )
_____)

**MEMORANDUM AND ORDER**

August 22, 2024

Saris, D.J.

**INTRODUCTION**

Plaintiff David Keane brings this action against his former
employers, Expeditors International of Washington, Inc.
("Expeditors US") and Expeditors Hong Kong Limited ("Expeditors
HK"), advancing Title VII and several state law claims arising out
of the termination of his employment. For over twenty-five years,
Keane worked as an account manager for Defendants. For the first
twenty years of his employment, he resided and worked in
Massachusetts as an employee of Expeditors US. In 2018, he
relocated to Hong Kong, continuing to manage the same account for
five more years. According to Keane, Defendants targeted him for
termination based on his gender and national origin. Although most

1

**ADD 1**

of the alleged discriminatory conduct occurred in Hong Kong, the negotiation and execution of Keane's initial employment agreement occurred in Massachusetts. Both Defendants move to dismiss for lack of personal jurisdiction and under the doctrine of forum non conveniens. After hearing, the Court **ALLOWS** Defendants' motion to dismiss (Dkt. 23).

## **FACTUAL BACKGROUND**

Keane's complaint alleges the following facts, which at this stage the Court accepts as true. In 1998, Keane began working for Expeditors US at the company's office in Peabody, Massachusetts. Expeditors US is a Washington-incorporated entity with its principal place of business in Seattle, Washington. It is a Fortune 500 company that provides logistics services and supply chain solutions for clients, such as freight forwarding, vendor consolidation, and cargo insurance. As a Global Account Manager, Keane oversaw the rapid expansion of the account for Lenovo Group Limited, a Chinese technology enterprise. Based on his success with the Lenovo account, in 2016 the company asked Keane to relocate to Hong Kong to manage the account from abroad, which he declined. In early 2018, the company pressured Keane to accept the relocation, this time by threatening termination. Keane reached a mutual oral agreement with Expeditors US that his relocation overseas would be temporary until a replacement employee could be

**ADD 2**

found, at which time Keane would be reinstated to his job in the Massachusetts office.

In July 2018, while still living in Massachusetts, Keane signed a written employment agreement that set forth the terms for his relocation and job in Hong Kong. See Dkt. 25-1 ("2018 Agreement"). The 2018 Agreement offered Keane employment with "Expeditors International of Washington Inc. Regional Office -- North Asia" and included a Hong Kong choice of law provision and a Hong Kong forum selection clause. See id. at 2, 8. Keane signed the agreement, as did Allen J. Wang in his role as "Senior Vice President -- North Asia." Dkt. 25-1 at 8-9. In September 2018, Keane relocated to Hong Kong and began working at Expeditors HK. Expeditors HK is a wholly-owned subsidiary of Expeditors US, incorporated in Hong Kong and with its principal place of business in Hong Kong.

In 2019, after about one year of working in Hong Kong, Keane was accused by a co-worker of engaging in unethical business relationships with his client at Lenovo. After investigating, an in-house attorney determined that the accusation lacked evidence. Keane became frustrated that Expeditors HK failed to impose any disciplinary action on the co-worker who brought the false allegations against him. Four years later, on September 21, 2023, Keane attended a company-hosted dinner at a hotel in Hong Kong. After the dinner, Keane was notified of a sexual harassment

3

**ADD 3**

complaint made against him by a sales representative who was present at the dinner. She alleged that Keane had grabbed her arm and kissed her shoulder without her consent at the dinner.

On September 25, 2023, four days after the company dinner, Expeditors HK presented Keane with a revised employment agreement, which he signed. See Dkt. 25-2 ("2023 Agreement"). The new agreement changed the name of his employer to "Expeditors Hong Kong Limited" and added a provision that stated: "The Company [Expeditors HK] acknowledges that your employment with the Company commenced on 1 September 2018 and will recognize that date for the purpose of all service-related terms." See id. at 2. The 2023 Agreement also stated that it superseded and replaced the 2018 Agreement. See id.

In December 2023, Keane's supervisor informed him at a meeting in the Hong Kong office that his employment was terminated. Following his termination, Keane returned to Massachusetts, where he currently resides.

## PROCEDURAL BACKGROUND

In January 2024, Keane filed an EEOC complaint in Boston, Massachusetts. Keane received a "Notice of the Right to Sue" and timely filed a complaint in this Court. The crux of Keane's allegations is that Defendants "devised and implemented a covert program designed to clandestinely reduce headcount without resorting to layoffs," and it was this program that "dismantled

4

**ADD 4**

critical safeguards intended to prevent discriminatory practices and protect due process." Dkt. 1 at 2. Keane's complaint also alleges that Defendants engaged in a discriminatory pattern of terminating American employees from the Hong Kong office. See id. at 36. Keane alleges the following six counts in his complaint: (I) violation of Title VII of the Civil Rights Act against both Defendants; (II) breach of oral contract against Expeditors US; (III) breach of the 2018 Agreement against Expeditors US; (IV) breach of the 2023 Agreement against Expeditors HK; (V) interference with prospective business relations against both Defendants; and (VI) negligent infliction of emotional distress against both Defendants.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the defendant. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). "Under the prima facie standard, the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008). Courts "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional

**ADD 5**

showing and construe them in the light most congenial to the plaintiff's jurisdictional claim." Id. (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)) (cleaned up). In order to make a prima facie showing of jurisdiction, "the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995).

**DISCUSSION**

**I.   Personal Jurisdiction**

Defendants move to dismiss Keane's complaint on the grounds that the Court lacks personal jurisdiction. To establish personal jurisdiction over both Expeditors US and Expeditors HK, Keane "must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). "Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, . . . a determination under

6

the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017). Section 3(a) of the Massachusetts long-arm statute, upon which Keane relies, provides for the exercise of jurisdiction over a defendant when the cause of action at issue arises from its transaction of business in the Commonwealth. See Mass. Gen. Laws ch. 223A, § 3(a). To find jurisdiction pursuant to Section 3(a), "the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must have arisen from the defendant's transaction of such business." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001). The primary inquiry is "whether the defendant attempted to participate in the commonwealth's economic life." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992).

Under the due process analysis, constitutional due process demands that the defendant must have sufficient contacts with the forum state such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945). Here, Keane makes no claim for general jurisdiction. See Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005) (explaining that general jurisdiction requires defendants have continuous and systematic

7

contacts with the forum state). Therefore, the Court's analysis focuses on specific personal jurisdiction, which involves three elements: relatedness, purposeful availment, and reasonableness. Daynard, 290 F.3d at 60.

Under the relatedness element, courts consider whether the claim directly arises out of, or relates to, the defendant's forum state activities. See id. at 61. "[T]he defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case." Harlow, 432 F.3d at 61 (cleaned up). For breach of contract claims, courts look to whether "the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999). For tort claims, courts "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Id.

Under the purposeful availment element, courts consider whether "the defendant's in-state contacts [] represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 60. "The two key focal points of this concept are voluntariness and foreseeability." Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007). Voluntariness requires that the defendant's contacts be

8

**ADD 8**

deliberate and "not based on the unilateral actions of another party." Id. Foreseeability requires that the contacts must be of a nature that the defendant could "reasonably anticipate being haled into court there." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Finally, under the reasonableness element, "the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." Daynard, 290 F.3d at 60. The First Circuit considers the following Gestalt factors to assess reasonableness:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 69 (1st Cir. 2014) (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994)). This part of the analysis "evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster, 26 F.3d at 210.

**A. Expeditors HK's Contacts**

Keane fails to establish a prima facie case of personal jurisdiction over Expeditors HK. Expeditors HK is a Hong Kong company registered to do business in Hong Kong and maintains a

9

**ADD 9**

principal office in Hong Kong. The Regional Vice President for Expeditors HK, Kaiser Lam, states in his affidavit that "Expeditors HK does not transact business in Massachusetts, did not contract to supply services or things in Massachusetts, does not regularly solicit business or engage in a persistent course of conduct in Massachusetts, and does not have an interest in using or possessing real property in Massachusetts." Dkt. 25 at 2. In contrast, Keane recalls that while he was employed at Expeditors HK, he "arranged some sales and deliveries to customers located in Massachusetts" and that "Expeditors HK had a revenue sharing agreement with Expeditors [US] regarding all air shipments from Hong Kong to Massachusetts." Dkt. 30 at 4; Dkt. 42 at 3.

Even assuming Expeditors HK arranged some shipments to Massachusetts, Keane's discrimination, breach of contract, and tort claims do not arise from those contacts. Instead, the factual allegations underpinning Keane's claims against Expeditors HK -- for example, the alleged discrimination against American foreigners, the company dinner party, the sexual harassment complaint, the investigation, the disciplinary hearing, and the resulting termination -- all occurred in Hong Kong, not Massachusetts. Keane has not met his burden under Section 3(a) of the Massachusetts long-arm statute because his causes of action do not arise from Expeditors HK's activities in Massachusetts. See Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291

10

**ADD 10**

(D. Mass. 2017) ("[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State."). Nor has Keane sustained his burden of establishing the relatedness element of the due process analysis.

In an attempt to connect Expeditors HK to Massachusetts, Keane argues that both "Defendants intentionally engaged with [Keane] while he was based in Massachusetts, with the aim of transferring him and the lucrative Lenovo account that he managed to Expeditors HK." Dkt. 29 at 10. However, as set forth in Keane's affidavit, it was Brian McGinnis, a director of Expeditors US, who approached Keane numerous times about relocating to Hong Kong and convinced him to sign the 2018 Agreement with "Expeditors International of Washington Inc. Regional Office -- North Asia." See Dkt. 30 at 2-3. The agreement was signed by Allen J. Wang in his role as "Senior Vice President -- North Asia." Dkt. 25-1 at 8. Keane does not identify any director or officer of Expeditors HK involved in the formation or negotiation of the 2018 Agreement.

Because Expeditors HK does not have the requisite minimum contacts with Massachusetts, the Court need not reach the reasonableness element. See Sawtelle, 70 F.3d at 1394 ("[W]e note that a failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness"). Keane has not carried his burden in showing that the Court could

11

**ADD 11**

properly exercise personal jurisdiction over Expeditors HK.
Accordingly, the motion to dismiss with respect to Expeditors HK
is **ALLOWED**.

### B. Expeditors US's Contacts

The Court next turns to analyze whether exercising
jurisdiction over Expeditors US is proper under the Massachusetts
long-arm statute and the Due Process Clause. Expeditors US
maintains a facility in Peabody, Massachusetts, which at the time
of Keane's employment had approximately 120 employees. Keane
himself worked at this Massachusetts facility for nearly two
decades. Brian McGinnis, a director of Expeditors US, approached
Keane when he was living in Massachusetts and negotiated the 2018
Agreement that resulted in Keane's relocation to Hong Kong.
Expeditors US's actions in Massachusetts therefore satisfy the
transacting-business requirement under the long-arm statute. See
Mass. Gen. Laws ch. 223A, § 3(a). By hiring employees and forming
contracts in the state, Expeditors US also invoked the benefits
and privileges of doing business in Massachusetts, thus satisfying
the purposeful availment inquiry under the due process analysis.

To determine whether Keane's claims arise from the alleged
in-forum activity, the Court considers each of the five claims
brought against Expeditors US individually.[1] See Phillips Exeter,

---

[1] Count IV alleges breach of the 2023 Agreement and was brought
against Expeditors HK only.

12

**ADD 12**

196 F.3d at 289 ("Questions of specific jurisdiction are always tied to the particular claims asserted."). Keane's three non-contract claims arise directly out of his allegedly wrongful termination and the investigation and disciplinary proceedings that preceded it. Specifically, the Title VII claim (Count I) alleges that Keane "was terminated from his employment due to his sex and/or national origin, in violation of Title VII of the Civil Rights Act." Dkt. 1 at 99. The interference claim (Count V) alleges that Expeditors US interfered with Keane's prospective business relations with clients by labelling him a "sex harasser" during their internal investigation and disciplinary proceedings. Id. at 111. And the claim of negligent infliction of emotional distress (Count VI) similarly alleges that Expeditors US subjected Keane to emotional distress by "falsely accusing [Keane] of sexual harassment, failing to conduct a fair investigation, unlawfully summarily dismissing him and publicizing the false allegations without just cause." Id. at 113. Given that the investigation, disciplinary hearing, and termination all occurred in Hong Kong, Counts I, V, and VI do not arise out of Expeditors US's forum state activities and are therefore dismissed for lack of personal jurisdiction under both the Massachusetts long-arm statute and the Due Process Clause. See Azumi LLC v. Lott & Fischer, PL, 621 F. Supp. 3d 219, 224 (D. Mass. 2022) (finding no jurisdiction under long-arm statute where claims did not arise from defendant's

13

**ADD 13**

purported connections to Massachusetts); Phillips, 530 F.3d at 27 (noting that plaintiff must demonstrate that all three jurisdictional elements under the Due Process clause are satisfied).

The inquiry is different, however, with respect to Keane's contract claims against Expeditors US (Counts II and III). Where the cause of action is an alleged breach of contract, the Court considers whether the defendant's activity in the forum state was "instrumental either in the formation of the contract or its breach." See Phillips Exeter, 196 F.3d at 289. In Adelson v. Hananel, the First Circuit affirmed a district court's finding of relatedness where the contract between the parties was formalized and entered into in Massachusetts, the forum state. 510 F.3d at 49. Here, both the alleged oral contract and the 2018 Agreement were negotiated and entered into while Keane was living in Massachusetts. Keane states that Brian McGinnis, a director of Expeditors US, targeted and pressured him into relocating to Hong Kong. Keane alleges that he eventually relented upon threat of termination and entered into a mutual oral agreement with Expeditors US. According to Keane, his "eventual return to his original position in the Massachusetts office was a fundamental component of the oral agreement." Dkt. 1 at 102. Keane and Expeditors US then negotiated and signed the 2018 Agreement, which set forth the terms of his employment in Hong Kong. Defendants

14

**ADD 14**

argue that the mere act of signing the agreement in Massachusetts was incidental to the overall formation of the agreement. However, the complaint alleges more than just the signing of the agreement in Massachusetts -- it alleges that Keane was pressured into relocating multiple times from 2016 to 2018 and that difficult negotiations were conducted in Massachusetts prior to the execution of the 2018 Agreement. See Adelson, 510 F.3d at 49 ("[N]othing could be more instrumental in the formation of a contract than the literal act of forming the contract itself."). The Court finds that Keane's contract claims against Expeditors US arise from and are related to Expeditors US's activities within the forum state. Therefore, both requirements of the Massachusetts long-arm statute have been met with respect to Counts II and III. The relatedness element of the due process analysis is also satisfied with respect to these counts.

### C. Reasonableness

The final question is whether exercising jurisdiction over Expeditors US with respect to Keane's contract claims is reasonable. A number of the Gestalt factors weigh in favor of a finding of reasonableness. First, Keane, who currently resides in Massachusetts, has a compelling interest in bringing his claim in the forum state. See Ticketmaster, 26 F.3d at 211 (noting that courts "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience"). Second, there is

15

no unusual burden for Expeditors US, a domestic Fortune 500 company, to appear in a forum state where the company already operates a facility. Third, Massachusetts has an interest in adjudicating claims involving contracts negotiated and formed in the state. Thus, with respect to Counts II and III, Expeditors US's contacts with Massachusetts establish "minimum contacts" in such a manner that it does not "offend traditional notions of fair play and substantial justice" for Keane to bring his contract claims in the forum state. See Int'l Shoe, 326 U.S. at 316.

### D. Alter Ego Theory

Finally, Keane alleges that Expeditors HK is subject to personal jurisdiction as Expeditors US's alter ego. In his complaint, Keane alleges that "Expeditors HK functions as an extension and alter ego of the US parent company" because "Expeditors HK shares common management with Expeditors [US] and the CEO of Expeditors is a director of Expeditors HK" and "Expeditors HK's management structure is so intertwined with Expeditors that they effectively operate as a single entity." Dkt. 1 at 7-8, 96. For example, Keane contends that Allen J. Wang serves as Senior Vice President of both Defendants, and that Jeffrey Dickerman serves as Vice President and General Counsel of both companies as well.

In general, courts "have presumed the institutional independence of parent and subsidiary when determining whether

16

**ADD 16**

jurisdiction may be asserted over the parent solely on the basis of the subsidiary's contacts with the forum." Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990). The record reflects that Expeditors HK "maintains its own ledgers and accounting books; prepares its own business plans, payroll, budget and financial statements . . . and controls the decisions regarding hiring and firing of its employees." Dkt. 25 at 3. Besides pointing to the overlapping leadership of the companies, Keane offers no evidence to refute the fact that Expeditors US and Expeditors HK observe corporate formalities as distinct entities. See Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980) (holding that "allegations of interlocking directorates and stock ownership will not alone suffice" to support an alter-ego theory for jurisdictional purposes). Keane has not provided sufficient evidence upon which the Court could plausibly find jurisdiction over Expeditors HK.

## II. **Forum Non Conveniens**

Defendants also move to dismiss Keane's claims pursuant to the doctrine of forum non conveniens. "The doctrine of *forum non conveniens* . . . permits a court to dismiss a case because the chosen forum (despite the presence of jurisdiction and venue) is so inconvenient that it would be unfair to conduct the litigation in that place." Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 140 (1st Cir. 2021) (quoting Howe v. Goldcorp Invs., Ltd., 946 F.2d

17

**ADD 17**

944, 947 (1st Cir. 1991)). A dismissal on these grounds requires the plaintiff to file his suit in a more convenient forum in order to obtain relief. Id. As the party moving for dismissal, Expeditors US "bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Imamura v. Gen. Elec. Co., 957 F.3d 98, 106 (1st Cir. 2020) (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)).

First, the Court looks to whether Hong Kong provides an adequate alternative forum for this dispute. An adequate alternative forum exists when "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." Id. (quoting Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991)). Here, Defendants are "amenable to process in Hong Kong because [they] conduct[] business in the country." Carpi Trading Corp. v. Bank Bumiputra Malaysia Berhad, 812 F. Supp. 1041, 1044 (N.D. Cal. 1993). Not only is Expeditors HK a Hong Kong-based company, but Expeditors US agreed to "submit to the non-exclusive jurisdiction of the Courts of the [Hong Kong Special Administrative Region]" for claims arising out of the 2018 Agreement or Keane's employment. Dkt. 25-1 at 8; see Contact Lumber Co. v. P.T. Moges

18

**ADD 18**

Shipping Co., 918 F.2d 1446, 1450 (9th Cir. 1990) (affirming dismissal where defendants submitted to jurisdiction in alternative forum).

Keane argues that Hong Kong is not an adequate forum because its legal system does not allow for contingency fee arrangements and its discovery procedures are more restrictive than in the United States. However, such procedural differences are not sufficient for finding an alternative forum to be inadequate. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 250-55 (1981) (holding that "dismissal on grounds of forum non conveniens may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery"). Keane also argues that Hong Kong courts are not appropriate due to political instability in the region. However, "[n]umerous courts . . . have found Hong Kong to be an adequate alternative forum for contract and tort disputes." Easy Spirit LLC v. DBS Bank LTD, No. 19-7290, 2019 WL 13133363, at *4 (C.D. Cal. Dec. 10, 2019) (listing cases) ("Plaintiff's descriptions of political unrest in Hong Kong do not demonstrate that the unrest has rendered the judicial system incapable of resolving Plaintiff's claim."). Thus, the Court finds that Hong Kong provides an adequate alternative forum to adjudicate Keane's contract claims.

In addition to an adequate available forum, "the defendant must show that the compendium of factors relevant to the private

19

**ADD 19**

and public interests implicated by the case strongly favors dismissal." Iragorri, 203 F.3d at 12. Relevant private interest factors include:

> the relative ease of access to sources of proof; availability [and cost] of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious[,] and inexpensive.

Imamura, 957 F.3d at 107 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Here, the locus of injury is in Hong Kong. In his complaint, Keane alleges that Expeditors US breached the oral agreement and the 2018 Agreement by wrongfully terminating him, not conducting a fair disciplinary proceeding, and failing to reinstate him to his job in Massachusetts. The 2018 Agreement provides that Keane could be "dismissed without notice and payment" from the company for misconduct, which included "[v]iolation of any of the policies articulated in the Company's Codes of Conduct" and "[s]erious or persistent breach [] of any of the terms and conditions of employment." Dkt. 25-1 at 5. Thus, determining whether Defendants terminated Keane with or without cause is integral to adjudicating Keane's contract claims. The events leading up to Keane's termination all occurred in Hong Kong, including the alleged sexual harassment, the investigation, the disciplinary proceeding, and the termination itself. Although Keane argues, without support, that witnesses are located around

20

the world, the Court finds that the location of evidentiary sources is at the center of gravity of the events surrounding Keane's termination, which lies in Hong Kong.

Moreover, as explained above, because the Court does not have jurisdiction over Expeditors HK or Keane's non-contract claims against Expeditors US, Keane would have to pursue those claims in Hong Kong. There is a benefit to resolving Keane's contract claims in the same forum and proceeding as his other claims, not only to avoid inconsistent findings or rulings, but also to save litigants the expense of parallel proceedings.

The public factors also weigh in favor dismissal. Relevant public factors include:

> the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Imamura, 957 F.3d at 107 (quoting Piper, 454 U.S. at 241). Here, the 2018 Agreement is expressly governed by Hong Kong law. See Dkt. 25-1 at 8 ("This agreement and your employment shall be governed by and construed in accordance with the laws of the Hong Kong Special Administrative Region (HKSAR)."). In general, there is a preference for a forum to apply laws with which it is familiar. See Dow Jones & Co. v. Juwai Ltd., No. 21-7284, 2023 WL 2561588,

21

**ADD 21**

at *11 (S.D.N.Y. Mar. 17, 2023) ("While this Court can address questions of Hong Kong law, Hong Kong courts are plainly better suited to the task. This alone is a strong -- though not dispositive -- factor favoring dismissal."). Finally, although the contracts at issue were executed in Massachusetts, Hong Kong has a greater interest in resolving what is, at its core, an employment dispute involving a Hong Kong employee and a Hong Kong company.

In summary, Defendants have met their burden of showing that Hong Kong is an adequate alternative forum for Keane's claims, and the balance of private and public interest factors weigh in favor of adjudication in a foreign forum. Although deference is given to Keane's preference for his home forum, Hong Kong is the more appropriate and convenient forum for adjudicating the dispute in its entirety. Accordingly, Keane's contract claims against Expeditors US (Counts II and III) are dismissed on the ground of forum non conveniens.[2]

## ORDER

For the reasons stated above, the Court **ALLOWS** the motion to dismiss all claims against Expeditors HK for lack of personal jurisdiction. The Court also **ALLOWS** the motion to dismiss Counts I

---

[2] After the motion to dismiss hearing, both parties filed supplementary briefing regarding Keane's intention of seeking leave to amend his complaint to add a Racketeer Influenced and Corrupt Organizations ("RICO") Act claim and a promissory estoppel claim. See Dkts. 51, 54. Since the action is dismissed in its entirety, the Court need not address these arguments.

**ADD 22**

(Title VII claim), V (interference with prospective business relations), and VI (negligent infliction of emotional distress) against Expeditors US for lack of personal jurisdiction. Finally, the Court **ALLOWS** the motion to dismiss Counts II (breach of oral contract) and III (breach of 2018 Agreement) against Expeditors US on the ground of forum non conveniens.

SO ORDERED.

                                    /s/ PATTI B. SARIS
                                    Hon. Patti B. Saris
                                    United States District Judge

**ADD 23**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| _____ | ) | |
| DAVID KEANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | No. 24-10399-PBS |
| EXPEDITORS INTERNATIONAL OF | ) | |
| WASHINGTON, INC., and EXPEDITORS | ) | |
| HONG KONG, LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER OF DISMISSAL**

SARIS, D.J.


In accordance with the Court's Memorandum and Order dated
August 22, 2024, granting Defendants' motion to dismiss (Dkt. 23),
it is hereby **ORDERED** that the above-entitled action be and hereby
is dismissed.


By the Court,

Robert Farrell, Clerk

8/22/2024                    /s/ Clarilde Karasek
Date                         Deputy Clerk


**ADD 24**

Case: 24-1971     Document: 00118246680     Page: 77     Date Filed: 02/11/2025     Entry ID: 6699666

Case 1:24-cv-10399-PBS   Document 65   Filed 10/18/24   Page 1 of 1
Case 1:24-cv-10399-PBS   Document 59   Filed 09/03/24   Page 1 of 4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

David Keane,

        Plaintiff,

v.

Expeditors International of
Washington, Inc. and
Expeditors Hong Kong Limited,

        Defendants.

No. 1:24-CV-10399-PBS

**PLAINTIFF'S MOTION TO ALTER OR AMEND ORDER DISMISSING
PLAINTIFF'S CASE UNDER FED. R. CIV. P. 59(e) OR, IN THE
ALTERNATIVE, TO CORRECT CLERICAL MISTAKES IN THE ORDER UNDER
FED. R. CIV. P. 60**

Plaintiff David Keane (**"Keane"**), by and through his
undersigned counsel, hereby respectfully moves this Honorable
Court, pursuant to Federal Rule of Civil Procedure 59(e), to
alter or amend its Memorandum and Order dated August 22, 2024
(Dkt. 57) granting Defendant's Motion to Dismiss (Dkt. 23) and
Order of Dismissal(Dkt. 58). In the alternative, Keane moves
this Court, pursuant to Federal Rule of Civil Procedure 60, to
modify the Memorandum and Order to correct certain clerical
mistakes and oversights in the Court's opinion.

WHEREFORE, Plaintiff David Keane respectfully requests
that this Honorable Court:

*10/18/24*
*Denied*
*Paul Saris*

**ADD 25**

| Cap. 480 | Sex Discrimination Ordinance | 01/07/2022 |
|---|---|---|

**6.    Sex discrimination against men**

(1)   Section 5, and the provisions of Parts 3 and 4 relating to sex discrimination against women, shall be read as applying equally to the treatment of men, and for that purpose shall have effect with such modifications as are necessary.

(2)   In the application of subsection (1) no account shall be taken of special treatment afforded to women in connection with pregnancy, childbirth or breastfeeding. *(Amended 8 of 2020 s. 6)*

*(Amended E.R. 1 of 2013)*

## Discrimination by Employers

**11.    Discrimination against applicants and employees**

(1)   It is unlawful for a person, in relation to employment by him at an establishment in Hong Kong, to discriminate against a woman—

(a)   in the arrangements he makes for the purpose of determining who should be offered that employment;

(b)   in the terms on which he offers her that employment; or

(c)   by refusing or deliberately omitting to offer her that employment.

(2)   It is unlawful for a person, in the case of a woman employed by him at an establishment in Hong Kong, to discriminate against her—

(a)   in the way he affords her access to opportunities for promotion, transfer or training, or to any other benefits, facilities or services, or by refusing or deliberately omitting to afford her access to them;

(b)   in the terms of employment he affords her; or

(c)   by dismissing her, or subjecting her to any other detriment.

(3)   Except in relation to discrimination falling within section 9, subsections (1) and (2) shall not apply to employment where the number of persons employed by the employer, added to the number employed by any associated employers of his, does not exceed 5 (disregarding any persons employed for the purposes of a private home).

*(4)   Subject to subsection (5), subsections (1)(b) and (2) shall not apply to provision in relation to death or retirement made for a woman before 15 October 1997 in so far as any such provision continues for that woman on and after that date. *(Replaced 71 of 1997 s. 2. Amended 136 of 1997 s. 2)*

(5)   Subsections (1)(b) and (2) shall apply to provision in relation to death or retirement of the kind mentioned in subsection (4) in so far as, in their application to such provision in relation to retirement, they render it unlawful for a person to discriminate against a woman—

**ADD 26**

(a) in such of the terms on which he offers her employment as make provision in relation to the way in which he will afford her access to opportunities for promotion, transfer or training or as provide for her dismissal or demotion;

(b) in the way he affords her opportunities for promotion, transfer or training or by refusing or deliberately omitting to afford her access to any such opportunities; or

(c) by dismissing her or subjecting her to any detriment which results in her dismissal or consists in or involves her demotion. *(Replaced 71 of 1997 s. 2)*

(6) Subsection (2) shall not apply to benefits, facilities or services of any description if the employer is concerned with the provision (for payment or not) of benefits, facilities or services of that description to the public, or to a section of the public comprising the woman concerned, unless—

(a) that provision differs in a material respect from the provision of the benefits, facilities or services by the employer to his employees; or

(b) the benefits, facilities or services relate to training.

(7) Subsection (3) shall expire on the 3rd anniversary of the day on which this Ordinance is enacted.

(8) For the purposes of subsection (3), 2 employers are to be treated as associated if one is a company of which the other (directly or indirectly) has control or if both are companies of which a third person (directly or indirectly) has control.

(9) The Chief Executive in Council may, by notice in the Gazette — *(Amended 66 of 1999 s. 3)*

(a) amend subsection (3) by substituting another number for the last number appearing in that subsection;

(b) amend subsection (7) by substituting another anniversary for the anniversary appearing in that subsection.

_____

Editorial Note:

\* Prior to its amendment by 136 of 1997, this subsection disapplies certain provisions of this Ordinance to certain death or retirement provision made before "the commencement of this section" in so far as that death or retirement provision continues "on and after that commencement". According to s. 5 of 136 of 1997, "the commencement of this section" meant, and always meant, for all purposes, the commencement of ss. 2, 3 and 4 of 71 of 1997, i.e. 15 October 1997.

### 14.   Meaning of employment at establishment in Hong Kong

(1) For the purposes of this Ordinance (*the relevant purposes*), employment is to be regarded as being at an establishment in Hong Kong unless the employee does his work wholly or mainly outside Hong Kong.

(2) Subsection (1) shall not apply to—

(a) employment on board a ship registered in Hong Kong; or

(b) employment on aircraft or dynamically supported craft registered in Hong Kong and operated by a person who has his principal place of business, or is ordinarily resident, in Hong Kong,

but for the relevant purposes such employment is to be regarded as being at an establishment in Hong Kong unless the employee does his work wholly outside Hong Kong.

**ADD 27**

(3)  In the case of employment on board a ship registered in Hong Kong (except where the employee does his work wholly outside Hong Kong) the ship shall for the relevant purposes be deemed to be the establishment.

(4)  Where work is not done at an establishment it shall be treated for the relevant purposes as done at the establishment from which it is done or (where it is not done from any establishment) at the establishment with which it has the closest connection.

**76.  Claims under Part 3 or 4**

(1)  A claim by any person (***the claimant***) that another person (***the respondent***)—

(a)  has committed an act of discrimination against the claimant which is unlawful by virtue of Part 3 or 4;

(b)  *(Repealed 29 of 2008 s. 95)*

(c)  has committed an act of harassment against the claimant which is unlawful by virtue of Part 3 or 4; or *(Amended 29 of 2008 s. 95; 3 of 2021 s. 12)*

(d)  is to be treated, by virtue of section 46, 46A or 47, as having committed an act of discrimination or harassment referred to in paragraph (a) or (c) against the claimant, *(Added 29 of 2008 s. 95. Amended 8 of 2020 s. 23; 3 of 2021 s. 12)*

may be made the subject of civil proceedings in like manner as any other claim in tort.

(2)  Subsection (1) shall not apply to a claim under section 17(1) of an act in respect of which an appeal, or proceedings in the nature of an appeal, may be brought under any enactment.

(3)  Proceedings under subsection (1) shall be brought in the District Court but all such remedies shall be obtainable in such proceedings as, apart from this subsection and section 75(1), would be obtainable in the Court of First Instance. *(Amended 25 of 1998 s. 2)*

(3A)  Without limiting the generality of the power conferred by subsection (3), the District Court may—

(a)  make a declaration that the respondent has engaged in conduct, or committed an act, that is unlawful under this Ordinance, and order that the respondent shall not repeat or continue such unlawful conduct or act;

(b)  order that the respondent shall perform any reasonable act or course of conduct to redress any loss or damage suffered by the claimant;

(c)  order that the respondent shall employ or re-employ the claimant;

(d)  order that the respondent shall promote the claimant;

(e)  order that the respondent pay to the claimant damages by way of compensation for any loss or damage suffered by reason of the respondent's conduct or act;

(f)  order that the respondent shall pay to the claimant punitive or exemplary damages; or

(g)  make an order declaring void in whole or part and either ab initio or from such date as may be specified in the order, any contract or agreement made in contravention of this Ordinance. *(Added 71 of 1997 s. 7)*

(4)  By virtue of this subsection and notwithstanding any law, the District Court shall have jurisdiction to hear and determine any proceedings under subsection (1) and shall have all such powers as are necessary or expedient for it to have in order to provide, grant or make any remedy, injunction or order mentioned in this Ordinance. *(Replaced 71 of 1997 s. 6)*

(5)  In respect of an unlawful act of discrimination falling within section 5(1)(b), 7(1)(b) or 8(b), no award of damages shall be made if the respondent proves that the requirement or condition concerned was not applied with the intention of treating the claimant unfavourably on the ground of the claimant's sex, marital status or pregnancy, as the case may be.

(5A)  Subsection (5) does not apply in relation to an unlawful act of discrimination falling within section 5(1)(b), 7(1)(b) or 8(b) that is committed on or after the commencement date* of Part 9 of the Discrimination Legislation (Miscellaneous Amendments) Ordinance 2020 (8 of 2020). *(Added 8 of 2020 s. 42)*

(6)  For the avoidance of doubt, it is hereby declared that damages in respect of an unlawful act of discrimination or harassment may include compensation for injury to feelings whether or not they include compensation under any other head. *(Amended 3 of 2021 s. 12)*

(7)-(8)  *(Repealed 71 of 1997 s. 6)*

*(Amended E.R. 1 of 2013)*

_____

Editorial Note:
*Commencement date: 19 June 2020.

**ADD 29**

# Part 3

# Discrimination and Harassment in Employment Field

*(Format changes—E.R. 5 of 2018)*

### Discrimination by employers

**10.    Discrimination against applicants and employees**

(1)    It is unlawful for a person (***the employer***), in relation to employment by the employer at an establishment in Hong Kong, to discriminate against another person—

   (a)    in the arrangements the employer makes for the purpose of determining who should be offered that employment;

   (b)    in the terms on which the employer offers that other person employment; or

   (c)    by refusing, or deliberately omitting to offer, the other person that employment.

(2)    It is unlawful for an employer, in the case of a person employed by that employer at an establishment in Hong Kong, to discriminate against that employee—

   (a)    in the terms of employment which the employer affords that employee;

   (b)    in the way the employer affords the employee access to opportunities for promotion, transfer or training, or to any other benefits, facilities or services, or by refusing or deliberately omitting to afford the employee access to them; or

   (c)    by dismissing the employee, or subjecting him or her to any other detriment.

(3)    Except in relation to discrimination falling within section 6, subsections (1) and (2) do not apply to employment when the number of persons employed by the employer, added to the number employed by any associated employers of that employer, does not exceed 5. This subsection does not apply to the employment by a person of another person to perform domestic duties on the premises on which the first-mentioned person or his or her near relative resides.

(4)    Subject to subsection (5), subsections (1)(b) and (2) do not apply to provision in relation to death or retirement for a person made before the commencement date* in so far as any such provision continues for that person on and after that date.

(5)    Subsections (1)(b) and (2) apply to provision made in relation to retirement of the kind mentioned in subsection (4) in so far as, in their application to such provision, they render it unlawful for a person (***the employer***) to discriminate against another person—

**ADD 30**

(a)  in such of the terms on which the employer offers that other person employment as make provision in relation to the way in which the employer will afford that other person access to opportunities for promotion, transfer or training or as provide for that other person's dismissal or demotion;

(b)  in the way the employer affords that other person opportunities for promotion, transfer or training, or by refusing or deliberately omitting to afford that other person access to any such opportunities; or

(c)  by dismissing that other person or subjecting that other person to any detriment which results in that other person's dismissal or consists in or involves that other person's demotion.

(6)  Subsection (2) does not apply to benefits, facilities or services of any description if the employer is concerned with the provision (for payment or not) of benefits, facilities or services of that description to the public, or to a section of the public comprising the employee in question, unless—

(a)  that provision differs in a material respect from the provision of the benefits, facilities or services by the employer to his or her employees;

(b)  the provision of the benefits, facilities or services to the employee in question is regulated by the employee's contract of employment; or

(c)  the benefits, facilities or services relate to training.

(7)  Except in relation to discrimination falling within section 5 or 6, nothing in subsection (1)(a) or (c) renders it unlawful for a person to discriminate against another person on the ground of the race of that other person, in connection with employment to perform domestic duties on the premises on which the first-mentioned person or his or her near relative resides.

(8)  Subsection (3) expires on the third anniversary of the day on which this Ordinance is enacted.

(9)  For the purposes of subsection (3), 2 employers are to be treated as associated if one is a company of which the other (directly or indirectly) has control or if both are companies of which a third person (directly or indirectly) has control.

(10)  The Chief Executive in Council may, by notice published in the Gazette, do either or both of the following—

(a)  amend subsection (3) by substituting another number for the number appearing after the word "exceed" in that subsection;

(b)  amend subsection (8) by substituting another anniversary for the anniversary appearing in that subsection.

_____

Editorial Note:
* Commencement date: 10 July 2009.

**16.    Meaning of employment at establishment in Hong Kong**

(1)  For the purposes of this Ordinance (***the relevant purposes***), employment is to be regarded as being at an establishment in Hong Kong unless the employee does his or her work wholly or mainly outside Hong Kong.

(2)  Subsection (1) does not apply to—

(a)  employment on board a ship registered in Hong Kong; or

**ADD 31**

   (b)   employment on an aircraft or a dynamically supported craft registered in Hong Kong and operated by a person whose principal place of business is in Hong Kong or who is ordinarily resident in Hong Kong,

but for the relevant purposes such employment is to be regarded as being at an establishment in Hong Kong unless the employee does his or her work wholly outside Hong Kong.

(3)   In the case of employment on board a ship registered in Hong Kong (except where the employee does his or her work wholly outside Hong Kong) the ship is deemed for the relevant purposes to be the establishment.

(4)   Where work is not done at an establishment it is to be treated for the relevant purposes as done at the establishment from which it is done or (where it is not done from any establishment) at the establishment with which it has the closest connection.

**70.**   **Claims in respect of discrimination, harassment and vilification**

(1)   A claim by or on behalf of any person (*the claimant*) that another person (*the respondent*)—

   (a)   has committed an act of discrimination against the claimant which is unlawful by virtue of Part 3 or 4;

   (b)   has committed an act of harassment against the claimant which is unlawful by virtue of Part 3 or 4;

   (c)   has committed an act which is unlawful by virtue of section 45; or

   (d)   is to be treated, by virtue of section 47, 47A or 48, as having committed an act of discrimination or harassment referred to in paragraph (a) or (b) against the claimant or an act referred to in paragraph (c), *(Amended 8 of 2020 s. 34)*

may be made the subject of civil proceedings in like manner as any other claim in tort.

(2)   Subsection (1) does not apply to a claim under section 19(1) of an act in respect of which an appeal, or proceedings in the nature of an appeal, may be brought under any enactment.

(3)   Proceedings under subsection (1) are to be brought in the District Court but all such remedies shall be obtainable in such proceedings as, apart from this subsection and section 69(1), would be obtainable in the Court of First Instance.

(4)   Without limiting the power conferred by subsection (3), the District Court may—

   (a)   make a declaration that the respondent has engaged in conduct, or committed an act, that is unlawful under this Ordinance and order that the respondent shall not repeat or continue such unlawful conduct or act;

   (b)   order that the respondent shall perform any reasonable act or course of conduct to redress any loss or damage suffered by the claimant;

   (c)   order that the respondent shall employ or re-employ the claimant;

   (d)   order that the respondent shall promote the claimant;

   (e)   order that the respondent shall pay to the claimant damages by way of compensation for any loss or damage suffered by reason of the respondent's conduct or act;

**ADD 32**

(f)  order that the respondent shall pay to the claimant punitive or exemplary damages; or

(g)  make an order declaring void in whole or in part and either ab initio or from such date as may be specified in the order, any contract or agreement made in contravention of this Ordinance.

(5)  By virtue of this subsection and notwithstanding any law, the District Court has jurisdiction to hear and determine any proceedings under subsection (1) and has all such powers as are necessary or expedient for it to have in order to provide, grant or make any remedy, injunction or order mentioned in this Ordinance.

(6)  In respect of an unlawful act of discrimination falling within section 4(1)(b), no award of damages is to be made if the respondent proves that the requirement or condition concerned was not applied with the intention of treating the claimant unfavourably on the ground of the race of the claimant.

(6A)  Subsection (6) does not apply in relation to an unlawful act of discrimination falling within section 4(1)(b) that is committed on or after the commencement date* of Part 9 of the Discrimination Legislation (Miscellaneous Amendments) Ordinance 2020 (8 of 2020). *(Added 8 of 2020 s. 44)*

(7)  For the avoidance of doubt, it is declared that damages in respect of an unlawful act of discrimination or harassment, or an act which is unlawful by virtue of section 45, may include compensation for injury to feelings whether or not they include compensation under any other head.

_____
Editorial Note:
* Commencement date: 19 June 2020.

**ADD 33**